2004 ME 133

Anthony DIVETO et al.

v.

Kent KJELLGREN et al.

Supreme Judicial Court of Maine.

Argued: Feb. 12, 2004.

Decided: Nov. 2, 2004.

Judy A.S. Metcalf, Esq. (orally), Eaton Peabody, Brunswick, for plaintiffs.

Bruce C. Mallonee, Esq. (orally), Christopher J. Austin, Esq., Rudman & Winchell, Bangor, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Anthony and Cynthia DiVeto appeal from the summary judgment entered by the Superior Court (Washington County, *Gorman, J.*) in which the court concluded that neither the DiVetos nor their neighbors, the Kjellgrens, held title to a disputed piece of land. The DiVetos contend, inter alia, that the motion court erred by failing to apply the tax lien statute of limitations provisions set forth in 36 M.R.S.A § 946–A (Supp.2003). The Kjellgrens also appeal, contending that a genuine issue of material fact exists relating to

their claim of title by acquiescence. We affirm the decision of the Superior Court.

## I. BACKGROUND

[¶ 2] The DiVetos and the Kjellgrens own neighboring property in Trescott Township in Washington County. During 1994 and 1995, the Kjellgrens built a house and driveway on a piece of that land to which the Kjellgrens now concede they do not hold title. The DiVetos, having had a survey performed, assert that they do hold title to the land on which the Kjellgrens have built.

[¶ 3] The property at issue is one of several parcels that were originally described in the 1830 B.R. Jones Revised Plan, recorded at book 13, page 28 of the Washington County Registry of Deeds. The Kjellgrens own part of Lot 9 from that Plan and, apparently mistakenly, built their residence on the westerly corner of abutting Lot 10. The DiVetos assert that they own Lots 10 and 11. They trace their title to Lot 10 to a 1954 tax lien foreclosure deed from the State of Maine to one of their predecessors in title, John J. Dixon Jr. The description of the land in the deed from the State to Dixon encompassed the property now claimed by the DiVetos and on which the Kjellgrens built. It cannot be disputed, however, that the owner against whom the State originally filed the tax lien did not own the western portion of Lot 10. Therein lies the crux of the dispute in this case.

[¶ 4] The confusion at issue traces back to a transfer of a portion of Lot 10 in 1948. Approximately five years before the imposition of the tax lien, Clyde Ackley owned Lots 10 and 11. In 1948, he conveyed all of Lot 11 and the easterly half of Lot 10 to Ronald Denbow.[1] Denbow apparently failed to pay his taxes, and in March 1951, the State of Maine filed and recorded a certificate of mortgage lien for unpaid taxes on Denbow's land. Unfortunately, the mortgage lien incorrectly identified the property as constituting *all* of Lot 10 and Lot 11.[2] It identified Denbow as the owner of both lots and did not identify Ackley as the owner of the westerly portion of Lot 10.[3] After foreclosing on the property, the State conveyed Lots 10 and 11 to John J. Dixon Jr. by instrument dated February 3, 1954, and recorded May 12, 1955.[4] By

---

1. Although the transfer from Ackley to Denbow is at the heart of the dispute in this case, that deed was never entered into the record. In an affidavit accompanying the Kjellgrens' statement of material facts, the Kjellgrens' expert averred that "[t]he Ackley to Denbow deed only describes the easterly half of Lot 10 and all of Lot 11." The motion court concluded that the DiVetos did not deny this statement and therefore accepted it as true. We agree. *See Town of Orient v. Dwyer*, 490 A.2d 660, 662 (Me.1985) (holding that if a party does not object to an opponent's failure to attach certified copies of documents referred to in the statement of material facts, the objection is waived); *cf. Chenard v. Marcel Motors*, 387 A.2d 596, 603 (Me.1978) (holding that a relevancy objection at trial is not specific enough to preserve best evidence and hearsay objections for appeal).

2. The certificate of mortgage lien referred to the property as land "[s]ituated in Trescott Township in the County of Washington, State of Maine, to wit: In S. Range, W. Division; Lots 10 and 11, Jones Revised Plan. Reference, deed Washington Registry Book 476, Page 264. Ronald E. Denbow ... 200 acres."

3. If any evidence of notice of the tax lien to Ackley or his successors ever existed, none exists in the record.

4. The deed contained the following description:

[A]ll the right, title and interest heretofore acquired by the State of Maine in and to the premises hereinafter described, this conveyance being made by the State Tax Assessor ... as follows: Trescott Township, Washington County. In S. Range, W. Division:

deed dated October 24, 1979, Dixon conveyed his interest in this parcel to the Jay Dee Trust. The Jay Dee Trust then conveyed this parcel to Acorn Associates, Ltd., and finally, on March 19, 1999, Acorn Associates, Ltd. conveyed the parcel, by now long described as containing Lots 10 and 11, to Anthony M. DiVeto and Cynthia D. DiVeto.

[¶ 5] In 1990, Kent and Ylva Kjellgren bought their land from M. Theresa Jalbert, Timothy J. Donahue, and Robert S. Wojcik. The deed did not convey any part of Lot 10 to the Kjellgrens. There were no existing buildings on the Kjellgren property at the time of conveyance, and the parcel was otherwise uninhabited. In 1993, the Kjellgrens began construction of a driveway. In 1994, they began construction of a residential building, which they completed in 1995. The Kjellgrens' driveway and building are located on the western half of Lot 10.

[¶ 6] In November 1998, the DiVetos and the Kjellgrens discussed the use of the Kjellgrens' driveway and property for installation of utility poles to benefit the DiVetos' property. After communication between the parties broke down, the DiVetos commissioned a survey, which revealed that the Kjellgrens' driveway and building were located on the westerly portion of Lot 10.

[¶ 7] Shortly thereafter, the DiVetos filed a complaint seeking a declaratory judgment that they are the rightful owners of all of Lots 10 and 11, and alleging that the presence of the Kjellgrens' residence and driveway constitutes a continuing trespass. The Kjellgrens filed a counterclaim seeking a declaratory judgment that they are the fee simple owners of the westerly portion of Lot 10; that they had acquired the property by adverse possession; and that they had acquired the property through title by acquiescence.

[¶ 8] As the case progressed, the Kjellgrens designated an attorney as an expert witness. The DiVetos deposed the expert on February 28, 2003. When asked whether or not he had an opinion about the superiority of title, he stated that both parties had a "colorable" claim. The DiVetos then designated their own attorney expert witness. That witness issued an opinion that the DiVetos "have title to Lot 10 and 11 of the B.R. Jones Plan (South Range, West Division) south of the public road" in Trescott, Maine, based on the tax lien certificate and 36 M.R.S.A § 946–A (Supp.2003).[5]

[¶ 9] The DiVetos moved for summary judgment against the Kjellgrens as to (1) count one of their complaint to establish the DiVetos' title to Lot 10 and the location of the Lot; (2) count one of the Kjellgrens' counterclaim seeking record title to

Lots 10 and 11 Jones' Revised Plan. Reference, deed Washington Registry, Book 476, page 264, containing 200 acres, more or less. As described in Resolve H.P. 146 L.D. 144 Chapter 29 Approved March 19, 1953.

**5.** The statute addresses tax-acquired property and the restriction of title action and states:

1. Tax liens recorded after October 13, 1993. A person may not commence an action against the validity of a governmental taking of real estate for nonpayment of property taxes upon the expiration of a 15–year period immediately following the expiration of the period of redemption. This subsection applies to a tax lien recorded after October 13, 1993.

2. Tax liens recorded on or before October 13, 1993. For a tax lien recorded on or before October 13, 1993, a person must commence an action against its validity no later than 15 years after the expiration of the period of redemption or no later than July 1, 1997, whichever occurs later.

3. Disability or lack of knowledge. Disability or lack of knowledge of any kind *does not suspend or extend the time limits* provided in this section.

Lot 10; (3) count two of the Kjellgrens' counterclaim alleging adverse possession; and (4) count three of the Kjellgrens' counterclaim alleging boundary by acquiescence.

[¶ 10] In response, the Kjellgrens contended that there was a factual dispute regarding title by acquiescence. They also sought summary judgment in their favor, asserting that there was no dispute that the DiVetos' predecessor in title never acquired title to the westerly portion of Lot 10. They relied on an affidavit from their expert witness, which stated that he did not believe that the DiVetos had an interest in the westerly portion of Lot 10. The Kjellgrens responded that "[t]he Ackley to Denbow deed only describes the easterly half of Lot 10 and all of Lot 11"[6] and referred to their expert's affidavit as the record citation for this statement. The DiVetos did not deny the statement, but asserted that "[t]he referenced deed speaks for itself."

▮▮▮ [¶ 11] The DiVetos moved to strike multiple paragraphs of the Kjellgrens' statement of facts to the extent the paragraphs offered a legal opinion of title, because the Kjellgrens failed to designate an expert to offer a legal opinion regarding superiority of title. The court denied the DiVetos' motion to strike, finding that the "dispute between the parties cannot truly be summarized as which party has the superior title; each has a claim, based upon different theories of property law."[7]

[¶ 12] The court declined to apply the fifteen-year statute of limitations set forth in 36 M.R.S.A. § 946–A in the manner urged by the DiVetos because such an application "would permit deprivation of property without due process of law" from the actual owner of the westerly portion of Lot 10, who never received notice of lien and was not listed on the tax lien certificate. Finding that, although Denbow received notice, there was no evidence in the record that the tax lien certificate identified the actual owners of the westerly portion of Lot 10, the court concluded that the original tax lien was invalid as to the westerly portion of Lot 10, and because the State had not acquired title to that property, it could not convey the property to Dixon or his successors in interest.

[¶ 13] Because the court concluded that neither party held legal title to the property, the Kjellgrens could not maintain a claim of title by acquiescence against the DiVetos, and the DiVetos could not maintain a claim of trespass against the Kjellgrens.

[¶ 14] The DiVetos appeal the grant of summary judgment with respect to their claim for declaratory judgment and trespass. The Kjellgrens appeal the grant of summary judgment with respect to their claim for title by acquiescence.

## II. DISCUSSION

▮▮▮ [¶ 15] We review the grant of a motion for summary judgment for "errors

---

36 M.R.S.A. § 946–A (Supp.2003).

**6.** This deed is referenced in the Denbow certificate of tax lien and the Dixon deed.

**7.** The DiVetos contend that the trial court erred by denying their motion to strike because the Kjellgrens' expert's affidavit conflicted with his deposition testimony. We review a court's judgment on a motion to strike for an unsustainable exercise of discretion. *Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶ 12, 750 A.2d 558, 561. A motion to strike is

appropriate when there is a direct contradiction between statements, *see Schindler v. Nilsen*, 2001 ME 58, ¶ 9, 770 A.2d 638, 641–42, and a party is unable to provide a satisfactory explanation for the inconsistency, *Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735. Because the affidavit and deposition are not directly contradictory and there is an adequate explanation for the enhanced detail in the affidavit, we do not disturb the court's denial of the DiVetos' motion to strike.

of law and independently examine the parties' statements of material facts to determine if a genuine issue of material fact exists." *White v. McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A.,* 2002 ME 160, ¶ 6, 809 A.2d 622, 623. A fact is material if it may affect the outcome of the case, and a genuine issue exists when sufficient evidence supports the requirement for a fact-finder to choose between competing versions of the truth at trial. *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575. We conclude that the material facts are not disputed here; rather, the dispute centers on the application of the law to those facts.

### A. Title to the Westerly Portion of Lot 10

[¶ 16] Although neither party offered into evidence the crucial deed, that is, the Ackley to Denbow deed, it is undisputed that Denbow did not own the westerly portion of Lot 10 when the State purported to take it from Denbow in a lien foreclosure. But for a legal barrier to challenging the State's erroneous description of the delinquent taxpayer's land, there would be no question that the westerly portion of Lot 10 did not pass to the DiVetos. Accordingly we look to the tax lien repose statute at 36 M.R.S.A. § 946–A, which limits the time period during which challenges to the legal validity of a tax lien can be brought to fifteen years.

[¶ 17] The motion court interpreted 36 M.R.S.A. § 946–A as a bar to challenges to the validity of tax liens only when the actual landowner was properly notified of the lien by the State through, at a minimum, identification in the tax lien certificate. To hold otherwise, the court reasoned, would constitute an unconstitutional deprivation of property without due process of law.

[¶ 18] "We review a trial court's interpretation of a statute directly for error of law and look to the plain meaning of statutory language to 'give effect to the legislative intent.'" *Town of Ogunquit v. Dep't of Pub. Safety,* 2001 ME 47, ¶ 7, 767 A.2d 291, 293 (citation omitted). If the statutory language is ambiguous, we will examine other evidence of legislative intent, such as legislative history. *Coker v. City of Lewiston,* 1998 ME 93, ¶ 7, 710 A.2d 909, 910. If a statute raises constitutional concerns, we will, whenever possible, construe the statute in a manner to avoid a declaration of unconstitutionality. *Town of Baldwin v. Carter,* 2002 ME 52, ¶ 12, 794 A.2d 62, 68.

[¶ 19] Accordingly, we look first to the plain language of the statute. "Disability or lack of knowledge of any kind does not suspend or extend the time limits provided in this section." 36 M.R.S.A. § 946–A(3). This phrase could be read to mean that after fifteen years there exists no recourse for an unaware property owner to challenge a tax lien on his land, even if that lien was generated based on governmental error and no notice was ever provided to the land owner. However, it is also possible to read this section so that such "disability" or "lack of knowledge" bars a challenge only for those upon whose land the government has a colorable right to foreclose in the first place. The ambiguity in the statute necessitates an examination of the history of section 946–A.

[¶ 20] The original tax lien statute of repose was enacted in 1993, then was repealed completely and replaced in 1995 with the current language. Public comment in 1995 included concern about precisely the situation we address today: the possibility of an arbitrary seizure of property by the government, with no recourse for the wronged citizen after a statutorily

limited period.[8] This concern was not directly addressed; instead the history of this statute indicates lawmakers' primary goal to free real estate transactions of title "clouds" after fifteen years in cases involving disability, minority, or lack of knowledge of a tax lien against their property. *See* 36 M.R.S.A. § 946–A(3). The historical record does not further address a situation in which the genesis of a dispute is governmental error in encompassing land not owned by the delinquent taxpayer.

■ [¶ 21] We conclude that an interpretation of section 946–A that would allow the government to take property through a process providing neither notice nor an opportunity to challenge an erroneous lien would run afoul of the basic concepts of due process embedded in the Fourteenth Amendment. *See, e.g., Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914) (stating that the fundamental requisite of due process is the right to be heard; the fact that notice constitutes due process within the meaning of the Fourteenth Amendment is no longer open to question); *Mutton Hill Estates, Inc. v. Town of Oakland,* 468 A.2d 989, 992 (Me. 1983) ("It is essential to a party's right to procedural due process that he be given notice of and an opportunity to be heard at proceedings in which his property rights are at stake."). Therefore, we must interpret the statute as barring challenges to the validity of tax liens only if the government has taken reasonable steps to protect a property owner's due process rights, which includes identification of and notice to property owners.[9] This is all the more important in a case such as the one before us, in which notice to the owner is not only necessary to satisfy the statutory requirement,[10] but where such notice could have resulted in notification to the State that they had made an error. In sum, we agree with the motion court that the well-founded desire of the Legislature to avoid instability in the area of property title transfers cannot extend to such fundamental due process failures as complete lack of notice to owners through significantly flawed property descriptions.

[¶ 22] Consistent with this conclusion, Maine Title Standards, in an analysis of section 946–A, calls for a title examiner relying on a tax deed to "search the title prior to the recording of such deed in order to confirm that title was in fact vested in the delinquent owner prior to the taking and to determine the legal description of the property in question." MAINE TITLE STANDARDS, No. 902 (1999).

8. "Considering the property rights of citizens ... should there not be some responsibility to insure [*sic*] that property acquired through tax lien not be seized arbitrarily?" L.D. 216 (117th Legis.1995), (March 14, 1995, citizen's letter to the Joint Standing Committee on Taxation).

9. In cases arising before the fifteen-year limitation period, we have held that the government must strictly adhere to the statutory notice requirements of 36 M.R.S.A. § 942 (1990 & Supp.2003). *See, e.g., Town of Pownal v. Anderson,* 1999 ME 70, ¶ 20, 728 A.2d 1254, 1258–59 (holding that a municipality's failure to list all record owners on the face of the tax lien rendered the purported lien invalid); *Cary v. Town of Harrington,* 534 A.2d 355, 358 (Me.1987) (stating that failure to correctly list a property owner's name will destroy the validity of the tax lien certificate and will prevent the town from acquiring title under the statutory tax lien foreclosure procedures); *Nadeau v. Town of Oakfield,* 572 A.2d 491, 492 (Me.1990) (finding that land descriptions on tax liens must be sufficiently accurate so that they can be identified with reasonable certainty).

10. "At the time of the recording of the tax lien certificate in the registry of deeds, in all cases the tax collector ... shall hand deliver or send by certified mail ... to each record holder of a mortgage on that real estate ... a true copy of the tax lien certificate." 36 M.R.S.A. § 942 (1990 & Supp.2003).

[¶ 23] In the present case, the 1948 conveyance from Ackley to Denbow left Ackley with a separate lot that was erroneously swept up into the 1951 foreclosure on the Denbow property. Such an error cannot find protection in the provisions of a tax lien repose statute and still pass constitutional muster. Because the 1951 tax lien certificate is void as to the westerly portion of Lot 10, the State never obtained title to that land and, consequently, did not acquire the ability to convey the property to Dixon in 1954. *See Calthorpe v. Abrahamson,* 441 A.2d 284, 287 (Me.1982) (stating that "[a] grantor can convey effectively by deed only that real property which [it] owns"). Thus, all subsequent conveyances of the westerly portion of Lot 10 in the Dixon chain of title, including the conveyance to the DiVetos, were ineffective, and the motion court correctly found that the DiVetos could not establish title to the westerly portion of Lot 10.[11]

B. Title by Acquiescence and Trespass Claims

[¶ 24] Because neither of the parties before the Court owns the disputed parcel, neither the Kjellgrens' claim of title by acquiescence against the DiVetos nor the DiVetos' claim of trespass against the Kjellgrens can prevail.

The entry is:

Judgment affirmed.

11. Contrary to the DiVetos' contention, the "competing experts" do not create a genuine issue of material fact. The experts based their conclusions on different interpretations of the law, not disputed material facts, and their respective opinions do not equate to "a factual contest" that requires the court to "choose between competing versions of the truth at trial." *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575.