STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-09-02

DEUTSCHE BANK NATIONAL TRUST,
as Trustee,

Plaintiff

v.

JEAN M. WARNER,
KENNETH MARTINEAU and
JOY MARTINEAU,

**ORDER**

Defendants

and

BENEFICIAL MAINE, INC.,

Party-in-Interest

This case comes before the Court on Defendants Kenneth and Joy Martineau's motion to dismiss pursuant to M.R. Civ. P. 12(b)(1), 12(b)(6), and 19(b).

BACKGROUND

Plaintiff Deutsche Bank National Trust Co. (herein "Deutsche) is a corporation organized under the laws of the United States and is bringing this action in its capacity as Trustee for Morgan Stanley ABD Capital Inc. Trust 2005-HE2. Complaint ¶ 1. Defendants Kenneth and Joy Martineau (herein "the Martineaus" or "Defendants") are residents of Parsonsfield, Maine. Complaint ¶ 2. Party-in-Interest, Beneficial Maine, Inc., is a Delaware corporation authorized to do business in the State of Maine. Complaint ¶ 3.

This action affects the title of real estate located in Parsonsfield, Maine. Complaint ¶ 4. At one time, the real estate at issue here was a portion of the homestead farm of John F. Fenderson, which was itself, at one time approximately 200 acres in size (herein "the homestead farm"). Complaint ¶ 5. Helen Berry acquired title to the entire homestead farm when (1) she inherited a one-fourth interest in the land from her mother, Queenie Fenderson, (2) she acquired a one-half interest by quitclaim deed from Richard Fenderson and Flora Berry, dated April 27, 1950, (3) she acquired a one-fourth interest by quitclaim deed from John, Herman, Linwood, and Carol Woodsome dated August 28, 1958, and finally (4) she obtained a quitclaim deed from the Inhabitants of the Town of Parsonsfield dated August 21, 1958. Complaint ¶ 6.

On August 23, 1971, October 5, 1972, and May 24, 1973, the Town of Parsonsfield caused a notice of tax lien to be recorded against Helen Berry.[1] Complaint ¶¶ 8, 10, 12. Plaintiff alleges that, at some point before the expiration of the redemption period, the Town of Parsonsfield "received and accepted payment of the taxes due from Helen Berry." Complaint ¶ 14.

Helen Berry resided on the homestead farm from the time she was born, until 2002, when she moved to a nursing home. Complaint ¶ 15. Ms. Berry had eight children, and one of them, George Berry, lived with his mother at the homestead farm until she moved to the nursing home; thereafter, he remained at the homestead farm until 2007, when the house was destroyed by fire. Complaint ¶¶ 17-18.

Plaintiff alleges that, in 1974, George Berry borrowed approximately $700.00 from his sister, Kathy Levesque, and used the money to pay off the taxes Ms. Berry owed to the Town of Parsonsfield. Complaint ¶18. Further, Plaintiff alleges that, after

---

[1]    In its complaint, Plaintiff alleges that "the description of land set forth or referred to in the notice[s] of tax lien . . . is too vague,or imprecise to identify a specific parcel of land, and the notice of lien is, therefore, void." Complaint ¶¶ 9, 11, 13.

he paid the Town for the taxes his mother owed, George Berry fraudulently induced the Town's selectman to issue a quitclaim deed on the homestead farm to him.[2] Such deed was issued to George Berry on November 5, 1974. Complaint ¶ 24.

After 1974, Helen Berry continued to occupy the homestead farm at 15 Berry Lane. Complaint ¶ 27. By warranty deed dated August 11, 1986, Helen Berry conveyed to her daughter Jean Warner a 2-acre portion of the homestead farm, along with a right of way allowing Warner to access her new lot; this lot is now identified as 33 Berry Lane. Complaint ¶ 28. Plaintiff alleges that George Berry had knowledge or actual notice of the warranty deed from Helen Berry to Jean Warner. Complaint ¶ 29. On July 31, 1988, Jean Warner obtained a building permit from the Town to construct a three-bedroom single-family residence on the area now known as 33 Berry Lane. Complaint ¶ 30. Between that time and 1991, the time in which it took Jean and Robert Warner to construct their new residence, the Warners lived with Helen Berry and George Berry at Helen's residence, located at 15 Berry Lane. Complaint ¶¶ 31-32. It is alleged that, at this time, George Berry knew that Jean Warner claimed title to 33 Berry Lane, but that at no time did he notify her that he, George Berry, claimed title to the entire homestead farm, including 33 Berry Lane. Complaint ¶¶ 33-34.

In 1991, the Warners moved from Helen Berry's house at 15 Berry Lane into their new residence located at 33 Berry Lane. Complaint ¶ 35. In 1987, the Town began assessing real estate taxes on 33 Berry Lane to Jean Warner. Complaint ¶ 36. Further, from 1987 to the present, Jean Warner or her mortgagee have paid real estate taxes on 33 Berry Lane. Complaint ¶ 37. Between March 17, 1994 and October 8, 2003, Jean

---

[2]    Plaintiff argues that this conveyance is void, as, under Article 21 of the Parsonsfield town ordinances, selectman are authorized on behalf of the town to sell and dispose of real estate acquired by the Town for non-payment of taxes (1) by a sale by public auction, or (2) by sale to the person to whom the property was taxed. Because the Town conveyed the homestead farm to George Berry, and not Helen Berry (the person to whom the property was taxed), Plaintiff argues that this conveyance is void.

3

Warner took out three mortgages on 33 Berry Lane, one with People's Heritage Savings and two with Beneficial Maine, Inc. Complaint ¶¶ 38-40. Moreover, by deed dated October 4, 2004, Jean Warner conveyed the property at 33 Berry Lane to herself and Robert Warren as tenants in common. Complaint ¶ 41. On that same date, the Warners granted a mortgage to Option One Mortgage Corporation on 33 Berry Lane.[3] Complaint ¶ 42.

By release deed dated December 14, 2004, George Berry conveyed to Kenneth Martineau, Jean Warner's son, and Joy Martineau whatever interest he had in the entire homestead farm.[4] Complaint ¶ 44. Plaintiff alleges that the Martineaus had knowledge or actual notice that Jean Berry was occupying the property located at 33 Berry Lane. Complaint ¶ 45. Further, Plaintiff points out that, despite their knowledge that Jean Warner was occupying and claiming title to the premises at 33 Berry Lane, George Berry and/or the Martineaus took no action to dispute Jean Warner's claim of title. Complaint ¶ 48.

On June 5, 2005 and April 25, 2006, the Warners again granted two additional mortgages to Beneficial Maine, Inc. on the premises located at 33 Berry Lane. Complaint ¶¶ 49-50. However, upon the death of Helen Berry, Kenneth Martineau informed his mother, Jean Warner, that he claimed title to the premises located at 33 Berry Lane. Complaint ¶ 51. Robert Warren died in September 2007. Complaint ¶ 52.

On January 7, 2009, Deutsche filed the present complaint. In the complaint, and based on the facts stated above, Deutsche asks this court to enter judgment against the

---

[3] The Plaintiff alleges that it is the current holder of the mortgage granted to Option One. Complaint ¶ 43.

[4] Plaintiff alleges that this deed was given without consideration or with merely nominal consideration (Complaint ¶ 46), and that the Martineaus are not bona fide purchasers of the homestead farm. (Complaint ¶ 47).

Defendants by (1) finding that Jean Warner is vested with title to the premises located at 33 Berry Lane by virtue of a warranty deed dated August 11, 1986, (2) barring the Martineaus from claiming any interest in the premises located at 33 Berry Lane adverse to the title held by Jean Warner (3) finding that Deutsch is the holder of a mortgage on the premises at 33 Berry Lane, such mortgage having been granted by the Warners on October 4, 2004, (4) barring the Martineaus from claiming any interest in the premises located at 33 Berry Lane adverse to the mortgage estate held by Deutsche. Alternatively, Deutsche asks that if this Court finds that the Martineaus hold title to the premises located at 33 Berry Lane adverse to the estate of Jean Warner, that it order the Martineaus to pay to the estate of Jean Warner and the Plaintiff the value of all improvements and betterments done on the premises located at 33 Berry Lane.

On February 12, 2009, the Martineaus filed the present motion to dismiss.

## DISCUSSION

### I.      Standard of Review

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. Because the Court reviews the complaint in the light most favorable to the plaintiff to ascertain whether it properly sets forth elements of a cause of action, "the material allegations of the complaint must be taken as admitted." *Id.* ¶ 5, 707 A.2d at 85. The Court should dismiss a claim only "when it appears 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (quoting *Hall v. Bd. of Envtl. Protection*, 498 A.2d 260, 266 (Me. 1985)).

### II.     Analysis

### A.      Is This Action Barred by the Provision of 36 M.R.S.A. § 946-A?

Deutsche argues that the several tax liens placed on Ms. Berry's property are void because the tax liens recorded by the Town of Parsonsfield were too vague or imprecise to identify the property on which the lien was being applied. Complaint ¶¶ 9, 11, 13. From this, Deutsche argues that the notices of lien are void.

Under 36 M.R.S.A. § 946-A(2), "for a tax lien recorded on or before October 13, 1993, a person must commence an action against its validity no later than 15 years after the expiration of the period of redemption or not later than July 1, 1997, whichever occurs later." Further, the Law Court instructs that "an interpretation of Section 946-A that would allow the government to take property through a process providing neither notice nor an opportunity to challenge an erroneous lien would run afoul of the basic concepts of due process embedded in the Fourteenth Amendment. *Diveto et al. v. Kjellgren et al.*, 2004 ME 133, ¶ 21; 861 A.2d 618, 624. As such, courts "must interpret [Section 946-A] as barring challenges to the validity of tax liens only if the government has taken reasonable steps to protect a property owner's due process rights, which includes identification of and notice to property owners." *Id.* Based on this, the Court found that the Legislature's desire to "avoid instability in the area of property title transfers cannot extend to such fundamental due process failures as complete lack of notice to owners through significantly flawed property descriptions."[5] *Id.*

However, under 36 M.R.S.A. § 943,

> The tax lien mortgage shall be prime facie evidence in all courts in all proceedings by and against the municipality, its successors and assigns, of the truth of the statements therein and after the period of redemption has expired, of the title of the municipality to the real estate therein described, and of the regularity and validity of all proceedings with reference to the acquisitions of title by such tax lien mortgage and the foreclosure thereof.

---

[5] The Law Court has adopted a "functional test" for determining the sufficiency of property descriptions contained in lien certificates. *Estabrook v. Town of Bowdoin*, 568 A.2d 1098, 1099 (Me. 1990). The "description must be sufficient to alert the property owner that his or her title to the property is in jeopardy. *Id.*

Defendants argue that Section 946-A bars this action because it involves three tax liens that were all recorded prior to July 1, 1997. In addition, Defendants argue that, as the time for redemption has expired, this Court must look to the tax lien mortgage as prima facie evidence of the regularity and validity of all proceeds with reference to the acquisition of title by such tax liens mortgage and the foreclosure thereof. See 36 M.R.S.A. § 943.

In response, Deutsche argues that as it is alleged in the complaint that Ms. Berry's property description contained in the tax liens were ambiguous or imprecise, and thus, based on these flaws, the time limits imposed by Section 954-A do not apply. See *Diveto*, 2004 ME at ¶ 21; 861 A.2d at 624.

While Defendants focus much of their argument on the fact that the property description contained in the tax liens are specific enough to meet due process scrutiny, at this stage, we must take the allegations contained in the Plaintiff's complaint as being admitted. Thus, as there are allegations in the complaint that the tax lien descriptions are insufficient, and because the Law Court has held that Section 946-A cannot bar challenges to tax liens when the government has failed to take reasonable steps to protect a property owner's rights, which includes proper identification[6], Section 946-A should not be read as barring this action.

Further, while Section 943 does state that, after the period of redemption has expired, tax lien mortgages shall be *prima facie* evidence of the "regularity and validity of all proceedings with reference to the acquisition to title by such tax lien mortgage," this cannot serve as a basis for dismissal. As stated in Section 943, the tax lien mortgage is *prima facie* evidence, not irrebuttable evidence, and as such, the Plaintiff should be

---

[6]     *Diveto*, 2004 ME at ¶ 21; 861 A.2d at 624.

7

given an opportunity, through discovery, to rebut the prima facie evidence that is the tax lien mortgage.

B.    Does the Complaint Fail to State a Claim Upon Which Relief can be Granted?

A constructive trust on a parcel of land is an equitable remedy that can be imposed in order to prevent unjust enrichment, fraud, undue influence, duress, or is retained in violation of a fiduciary duty. *Corey v. Corey,* 2002 ME 132 ¶ 10, 803 A.2d 1014, 1017; *Sleamaker v. Hommond,* 576 A.2d 753, 755 (Me. 1990); *Thomas v. Fales,* 577 A.2d 1181m 1182-1183 (Me. 1990)(citing *Restatement of Restitution* § 160 (1937)).

Here, Defendant argues that because there are no allegations of unjust enrichment, fraud, or mistake, the complaint fails to state a claim upon which relief can be granted. However, in looking at the complaint, Plaintiff alleges fraud (¶ 22), and violation of a confidential relationship (¶ 25). As both allegations can serve as the basis for the imposition of a constructive trust, the complaint does not fail to state a claim upon which relief can be granted.

C.    Does Deutsche Lack Standing to Bring this Action?

Defendant argues, without citing any authority, that the "distance alone, within each chain of title" between Deutsche and the Town's conveyance to George Berry "should establish that Deutsche has no standing" to bring this suit. This argument is without merit because, at this stage, the Plaintiff's allegations must be deemed as admitted, and the complaint sufficiently connects Deutsche with the original owner of the homestead farm, Helen Berry.[7]

Alternatively, Defendants argue that, as this is in the nature of a derivative or taxpayer suit, and such suit requires special injury not alleged in the complaint, see

---

[7]    Defendants also point out that, "[a]lthough this is only a motion to dismiss, if an answer is required to be filed, the affirmative defense of laches will be raised."

*Buck v. Yarmouth,* 402 A.2d 860, 862 (Me. 1979), Deutsche lacks standing to bring this suit. Further, Defendants argues that, even if there is standing, the role of the court in a derivative or taxpayer suit is limited to granting preventative, not remedial relief. *Cohen v. Ketchum,* 344 A.2d 387 (Me. 1975). As Deutsche is asking for remedial relief, Defendants argue that, even if they have standing, the Court lacks the authority to grant the relief requested by Deutsche.

In response, Deutsche argues that this is not a taxpayer or derivative suit because it, the bank, is (1) not a taxpayer or citizen of the Town of Parsonsfield, and (2) this action is not against the municipality.

As a derivative or taxpayer suit must be against a municipality or other state actors, and this case is solely against private actors, this action cannot be considered a derivative or taxpayer suit, and thus, is not limited by the requirements of such a suit.

D.      Does this Court Lack Subject Matter Jurisdiction to Decide this Case?

14 M.R.S.A. § 6051 delineates the cases in which the Superior Court has "jurisdiction to grant appropriate equitable relief." Among other types of cases, the Superior Court is given authority to grant equitable "relief in cases of fraud, trust, accident or mistakes." 14 M.R.S.A. § 6051(4).

Proceedings to quiet title are outlined by 14 M.R.S.A. §§ 6651 *et al.* However, the Declaratory Judgment Act (DJA), 14 M.R.S.A §§ 5951-5963, can be used as a procedural vehicle for defining rights in real property. *Bell v. White,* 510 A.2s 509, 515 (Me. 1986). The DJA "is remedial in nature and should be liberally construed to provide a simple and effective means by which a parties may secure a binding judicial determination of their rights." *Id.* (quoting *Hodgdon v. Campbell,* 411 A.2d 667, 669 (Me. 1980). The Law Court has recognized that "[w]hile the source of jurisdiction to quiet title is found in the quiet title provisions, 14 M.R.S.A. §§ 6651-6662, the Declaratory Judgment Act creates a

9

more adequate and flexible remedy, avoiding the 'arcane intricacies found in the procedural requirements' of the quiet title provisions." *Hodgdon*, 411 A.2d at 670-671. The Law Court has specifically recognized that the DJA is "a particularly efficacious method for quieting title to real property. *Id.* at 669-670.

Here, the parties argue over the "arcane intricacies found in the procedural requirements" of the quiet title provisions. However, while not specifically invoked in the Complaint, the DJA could serve as a procedural vehicle for defining the rights of the parties in this matter. The Defendants recognize this fact, but insist that "the fact that the Law Court has encouraged parties to couch quiet title actions in the context of declaratory judgment actions does not relieve a plaintiff from the necessity of alleging a source of jurisdiction extrinsic" to the DJA. The Defendants argue that this extrinsic source must be the quiet title provisions. Thus because Deutsche is not "[a] person in possession of real estate, claiming an estate of freehold therein . . . or a person who has conveyed such property or any interest therein with covenants of title or warranty, upon which he may be liable," as required by the quiet title provisions, Defendants argue that this Court lacks jurisdiction.

However, it must be remembered that Deutsche alleged fraud in its complaint, and under 14 M.R.S.A. § 6051, the source of the court's equity jurisdiction, this Court can grant equitable "relief in cases of fraud, trust, accident or mistakes." 14 M.R.S.A. § 6051(4). Thus, based on the DJA and 14 M.R.S.A. § 6051, this Court has subject matter jurisdiction to decide this case.

E.    Did Deutsche Fail to Join a Party?

Under M.R. Civ. P. 19(a)

A person who is subject to service of process shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so

situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

Defendant argues that, if, as alleged by Deutsche, the Selectman's conveyance to George Berry was without authority, then the interest must revest with the Town, and as such, the Town should be joined as a party. However, as noted by Deutsche, the Town has not made a claim of interest in the subject property. Under the Town's ordinances, after Helen Berry's taxes were paid in full, the Town should have conveyed the property back to Helen Berry. Thus, even if voiding the tax liens would revest the property back to the Town, under the Town ordinances, because Ms. Berry taxes were paid off, the Town would be required to convey the property to Ms. Berry, her heirs or assigns (i.e. Deutsche). As such, because (1) the Town has not claimed an interest relating to the subject property, (2) the Town has no rights to retain title to the property if the tax liens are voided and thus has not interests to protect, and (3) there has been no suggestion by Defendants that not joining the Town would "lead to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest" M.R. Civ. P. 19(a) does not require that the Town be joined to this action.

### CONCLUSION

Defendants' motion to dismiss is hereby DENIED. Defendants should answer the complaint within 30 days.

Dated:     June 16, 2009

G. Arthur Brennan
Justice, Superior Court

Michael Nelson, Esq. - PL
Nicholas J. Morrill, Esq. - PL
Robert S. Hark, Esq. - DEFS. KENNETH & JOY MARTINEAU

11