STATE OF MAINE                          BUSINESS & CONSUMER DOCKET
PORTLAND, ss.                           DOCKET NO. BCD-RE-20-02


RIVERWALK REALTY, LLC,            )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   ORDER GRANTING DEFENDANT'S
                                 )   SECOND MOTION TO DISMISS
RIVERWALK CONDOMINIUM            )
ASSOCIATION,                     )
                                 )
          Defendant.             )


This case continues to involve a garage abutting Unit 100 of the Riverwalk Condominium. This Court previously dismissed Count II of the Complaint, which pled a claim for adverse possession. Plaintiff Riverwalk Realty, LLC ("Riverwalk Realty") has since (with leave of Court) filed an Amended Complaint for Declaratory Judgment (the "Amended Complaint"). The Amended Complaint asks the Court to "Declare and Order that the garage abutting Unit 100 of Riverwalk Condominium in Damariscotta, Lincoln County, Maine, is owned by the owners of Unit 100." Defendant Riverwalk Condominium Association (the "Association") has filed (with leave of Court) a Second Motion to Dismiss on the grounds *inter alia* that since Plaintiff does not own Unit 100, Riverwalk Realty lacks standing to bring the action. The Court agrees, and for the following reasons grants the Association's Second Motion to Dismiss.

**STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp*., 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it

1

sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id*. The Court may also properly consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint…when the authenticity of such documents is not challenged." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.

## FACTS

Riverwalk Realty is a limited liability company incorporated in the State of Maine. Plaintiff's Complaint (Pl.'s Amd. Compl. ¶ 1.) Riverwalk Condominium is located in Damariscotta, Maine. (Pl.'s Amd. Compl. ¶ 7 .) Riverwalk Realty owns Units 110, 111, 116, and 119 of Riverwalk Condominium. (Pl.'s Amd. Compl. ¶ 3.) Riverwalk Realty previously owned Unit 100 of Riverwalk Condominium, but sold Unit 100 to Defendants Todd and Heather Savage (the "Savages") before commencing this action. (Pl.'s Amd. Compl. ¶¶ 7-8.) During the sale transaction, Riverwalk and the Savages determined the ownership of the garage abutting Unit 100 was unclear. (Pl.'s Amd. Compl. ¶ 9.)

As the owner of one or more units, Riverwalk Realty is a member of the Association. The Association is a non-profit corporation comprised of Riverwalk Condominium unit owners. (Pl.'s Amd. Compl. ¶¶ 2-4.) Riverwalk Realty occupies a seat on the Association's Executive Board.

Riverwalk Condominium was previously known as the Oyster Shell Motel Condominium and was originally offered for Public Sale on September 3, 1987. (Pl.'s Amd. Compl. ¶¶ 11, 23.) The Declaration of Condominium is dated September 16, 1987 and recorded in the Lincoln County Registry of Deeds, Book 1422, Page 256. (Pl.'s Amd. Compl. ¶ 10.)  The Declaration defines

2

Unit 100's boundary lines as follows: "(1) The vertical boundary lines are as shown on the Plats and Plans, and consist of real estate on which the Building in located. (2) There are no horizontal boundary lines. (3) The Unit further includes (whether within the aforesaid boundary lines or not) all roofing and roof overhand, eaves, gutters, doors, chimneys, doorstops and thresholds, and all other parts of the Building." (Pl.'s Amd. Compl. ¶ 10).  The plans filed with the 1987 Declaration of Condominium do not depict a garage abutting Unit 100.  (Pl.'s Amd. Compl. ¶12.)   A revised site plan and additional plans of other condominium units were recorded in 1992, but these plans also do not depict the garage. (Pl.'s Amd. Compl. ¶ 19.)

The garage was built between 1980 and 1993. (Pl.'s Amd. Compl. ¶ 13.)  According to the Town's February 25, 2003 Valuation Report for Unit 100, the garage abutting Unit 100 was built in 1993. (Pl.'s Amd. Compl. ¶ 14.) However, other town documents indicate the garage may have been built in 1980. (Pl.'s Amd. Compl. ¶ 15.) Since being built, the garage has been visibly used, occupied, and controlled exclusively by the Owner of Unit 100. (Pl.'s Amd. Compl. ¶ 16). The owners of Unit 100 have been taxed for the garage since at least 1993. (Pl.'s Amd. Compl. ¶ 17.) Utilities serving the garage are also billed to and paid by the owners of Unit 100. (Pl.'s Amd. Compl. ¶ 18.)

On August 18, 2006, the Declaration of Condominium was restated (the "Restated Declaration") and recorded on August 25, 2006 in the Lincoln County Registry of Deeds Book 3279, Page 53.  (Pl.'s Amd. Compl. ¶ 20.)  Section 3.1(b) of the Restated Declaration describes the boundary lines for Unit 100 using the identical description as in the original Declaration but does not mention the abutting garage. (Pl.'s Amd. Compl. ¶¶ 21, 22.)

3

**DISCUSSION**

It is axiomatic that in order to maintain an action, a plaintiff must have standing to sue. Horton & McGehee, Maine Civil Remedies §1-5(a), p.8 (2004). "Standing to sue means that the party, at the commencement of the litigation, has sufficient personal stake in the controversy to obtain judicial resolution of that controversy." *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1379 (Me. 1996) (citations omitted). With regard to real property, a party may not seek judicial action without having an interest in the property at issue. *DiVeto v. Kjellgren*, 2004 ME 133, ¶ 24, 861 A.2d 618.

> Normally, to maintain in action to enforce property rights, a plaintiff must have sustained injury to his personal or property rights, and must stand to benefit from the relief sought. Similarly, a plaintiff must assert his own rights and interests, and may not seek relief based on the rights and interests of others, except in a recognized representative capacity.

Horton & McGehee, Maine Civil Remedies §1-5(a), p.8 (2004); *see also Laux v. Harrington*, 2012 ME 18, 24 n.4, 38 A.3d 313 (cannot advocate for easement rights on behalf of non-parties). Absent an interest in the disputed property, a party may not seek judicial action concerning land use. *Nichols v. Rockland*, 324 A.2d 295, 296 (Me. 1974).

In this case, Riverwalk Realty sold its right, title and interest in Unit 100 prior to the commencement of the litigation. Riverwalk Realty does not claim to have sustained any injury to its personal or property rights. Riverwalk Realty is not acting in a representative capacity. The current owners of Unit 100 are not parties to the action. Moreover, Riverwalk Realty is not claiming any ownership in the garage. To the contrary, as the Amended Complaint makes explicitly clear, Riverwalk Realty is seeking a declaratory judgment that the garage abutting Unit

100 is owned by the owners of Unit 100.[1]  Accordingly, Riverwalk Realty lacks standing to bring this action, and the action must be dismissed.

Riverwalk Realty counters that although it doesn't own Unit 100, it nevertheless has sufficient interest in the fate of the garage to have standing to sue.  First, Riverwalk Realty points out that as the prior owner of Unit 100, the Town billed it for taxes on the garage, and utility companies billed it for utilities associated with the garage.  Riverwalk Realty argues that if the Court determines the garage is a common element, Riverwalk Realty will have a claim against the other unit owners individually or the Association for recovery of those tax and utility payments.  However, there are multiple weaknesses to this argument.  Riverwalk Realty is not in this litigation seeking recoupment of payments.  And setting aside all the issues involved in suing unit owners or the Association for payments Riverwalk Realty made to third parties, Riverwalk Realty's interest (if any) would be in recovery of the payments, not ownership of the garage.  Under the circumstances of this case, prior tax and utility payments associated with a garage abutting property that was sold by a plaintiff prior to the start of the action,  do not as a matter of law provide such a plaintiff with standing to sue for a declaratory judgment that the garage is owned by a non-party to the litigation.

Second, Riverwalk Realty asserts that as the owner of other units in Riverwalk Condominium, Riverwalk Realty has an interest in establishing the ownership of the garage.  Specifically, Riverwalk Realty contends that if the Court determines the garage is a common element, Riverwalk Realty will have the right to use the garage in common with other unit owners, and the responsibility to bear a portion of the expenses associated with the garage in common with other unit owners.  Riverwalk Realty's argument might achieve some traction if it were bringing

---

[1] Indeed, in its Opposition, Riverwalk Realty argues that "the Garage is part of Unit 100, and exists solely for the usage and enjoyment of the owner(s) of that unit."  (Def.'s Opposition ¶ 4.)

suit to declare the garage a common element, but that is not the case. To the contrary, Riverwalk Realty is seeking a declaration that the garage is owned by the owners of Unit 100. Riverwalk Realty lacks standing to, in effect, bring this action on behalf of Unit 100.

Third, Riverwalk Realty notes that it holds a seat on the Association's executive board, the executive board has declined to take up the disputed ownership of the garage,[2] and Riverwalk Realty has no other recourse. Riverwalk Realty, however, has no right to bring a derivative action involving the Association, and even if it did, the Amended Complaint falls far short of pleading the necessary elements. *See* M.R. Civ. P. 23A.

Finally, Riverwalk Realty maintains that Section 12.2 of the Restated Declaration invests it with standing to bring a declaratory judgment, and that might be true[3] were Riverwalk Realty the owner of Unit 100, or if Riverwalk Realty were otherwise seeing a declaration that it owned the garage. Where, as here, Riverwalk Realty is seeking the establishment of property rights in a non-party to the litigation, the Restated Declaration cannot create standing where none exists.

**CONCLUSION**

For all the foregoing reasons, Plaintiff's Second Motion to Dismiss is GRANTED. Since the Amended Complaint consists of only the request for a declaratory judgment, the Amended Complaint in its entirety is dismissed.[4]

---

[2] This fact is not alleged in the Amended Complaint, and thus the Court does not accept it as admitted for purposes of deciding the Second Motion to Dismiss.

[3] The Court is speaking hypothetically. The Declaration was not attached to or made an exhibit of the Amended Complaint, and thus the Court declines Riverwalk Realty's implicit request to consider the content of Declaration as part of the Motion to Dismiss record. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.

[4] On July 28, 2020, the Association filed its Answer, along with a Counterclaim against Riverwalk Realty. With leave of Court, Riverwalk Realty later filed an Amended Complaint. The Association has not yet answered the Amended Complaint, and now no longer needs to do so. As a result, the Court dismisses as moot the Counterclaim in response to the original Complaint. The dismissal is without prejudice. If the Association seeks relief of the kind sought in its Counterclaim, the Association may file an original action with the necessary parties.

So Ordered.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

Dated:__February 23, 2021___        _____/s/_____

                                            Michael A. Duddy
                                            Judge, Business and Consumer Docket

**RIVERWALK REALTY, LLC**

      **v.**

**JAMES COLLINS, et al.**

**and**

**BANK OF AMERICA, N.A.**
**BATH SAVINGS INSTITUTION,**
**FIRST FEDERAL SAVINGS & LOAN,**
**ASSOCIATION OF BATH, THE FIRST, N.A.**


| | |
|---|---|
| **Plaintiff Counsel:** | David Levesque, Esq. |
| | *Law Offices of David Levesque* |
| | 242 Main Street |
| | PO Box 425 |
| | Damariscotta, ME 04543 |
| | |
| **Defendant Counsel:** | |
| | |
| Riverwalk Condominium | Michael Donlan, Esq. |
| Association | *Verill Dana, LLP* |
| | One Portland Square |
| | Portland, ME 04101-4054 |

RIVERWALK REALTY, LLC,      )
                                    )
        Plaintiff,          )
                                    )
        v.                )
                                    )
JAMES COLLINS, et al.,      )    ORDER GRANTING DEFENDANT
                                    )    RIVERWALK CONDOMINIUM
        Defendants,     )    ASSOCIATION'S MOTION TO
                                    )    DISMISS ALL DEFENDANTS OTHER
BANK OF AMERICA, N.A,     )    THAN THE ASSOCIATION
BATH SAVINGS INSTITUTION,  )
FIRST FEDERAL SAVINGS & LOAN  )
ASSOCAITION OF BATH, THE    )
FIRST, N.A.                   )
        Parties-in-Interest.   )

 

This case involves a garage abutting Unit 100 of the Riverwalk Condominium. Plaintiff Riverwalk Realty, LLC ("Riverwalk" or "Plaintiff") brought a two count Complaint[1] against Defendant Riverwalk Condominium Association (the "Association" or "Defendant") and each of the Unit owners claiming that the owners of Unit 100 own the garage.[2] In response to the suit, the Association moved to dismiss the unit owners as Defendants,[3] and moved to dismiss Count II for failure to state a claim pursuant to M.R. Civ. 12(b)(6).[4] On October 21, 2020 the Court held oral argument on the Motion to Dismiss, and dismissed Count II from the bench due to lack of

---

[1] Count I requests a Declaratory Judgment; Count II claims adverse possession.

[2] Notably, Riverwalk is not the owner of Unit 100. Riverwalk is the former owner of Unit 100, but sold Unit 100 before commencing this action.

[3] Plaintiff also named Bank of America, N.A., Bath Savings Institution, First Federal Savings & Loan Association of Bath, and The First, N.A, as parties-in-interest by virtue of mortgages. (Pl.'s Compl. ¶¶ 26-29.) The propriety of the parties-in-interest has not been challenged.

[4] The Association filed a Counterclaim with its answer seeking a Declaratory Judgment that the garage is a common element of the Riverwalk Condominium and not part of Unit 100.

standing.[5]  Remaining before the Court is the issue of whether the Association is the sole proper

Defendant. The Court finds that it is, and for the reasons discussed below, the Court grants the

Association's Motion to Dismiss the unit owner Defendants.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the

complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d

123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it

sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief

pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830).

"Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief

under any set of facts that he might prove in support of his claim." *Id*.  The Court may also properly

consider "official public documents, documents that are central to the plaintiff's claim, and

---

[5] The Court found that Riverwalk did not have standing to bring an adverse possession claim for the garage because it no longer owns Unit 100, is not in possession of the garage, and may not assert property rights on behalf of others. *See generally DiVeto v. Kjellgren,* 2004 ME 133, ¶ 24, 861 A.2d 618 (holding that one who does not own a parcel cannot maintain a claim of title by acquiescence or a claim of trespass); *Laux v. Harrington*, 2012 ME 18, ¶ 24 n.4, 38 A.3d 318 (noting that a party arguing for easement rights on behalf of non-parties may not have standing to assert such rights). The Court has serious reservations about whether Plaintiff even has standing to pursue the declaratory relief requested in Count I. To have standing, a party must have a sufficient personal stake in the controversy, at the initiation of the litigation, to seek a judicial resolution of the controversy. *Madore*, 1998 ME 178, ¶ 8, 715 A.2d 157. Courts may only decide cases involving justiciable controversies. *Gregor*, 2015 ME 108, ¶ 16, 122 A.3d 947. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *Nichols v. Rockland*, 324 A.2d 295, 296 (Me. 1974) A party may not seek judicial action concerning land use without having an interest in the property at issue. *Id.* at ¶ 9; *DiVeto,* 2004 ME 133, ¶ 24, 861 A.2d 618. Absent an interest in the disputed property, the party is unable to invoke an actual controversy to be resolved by judicial action. *Madore*, 1998 ME 178, ¶ 9, 715 A.2d 157.  In the present matter, since the Association did not move outright for dismissal of Count I, the Court does not reach the standing issue as it pertains to Count I.  At oral argument, the Association sought permission to file a second Motion to Dismiss, this time targeted at Count I in its entirety. The Court grants the request because standing constitutes an issue of justiciability and jurisdiction, and as such, the Court may notice and act on it at any time even without a motion by a party. *Madore v. Me. Land Use Regulation Comm'n*, 1998 ME 178, ¶ 8, 715 A.2d 157 (labeling standing as an issue of justiciability); *Stull v. First Am. Title Ins. Co.*, 2000 ME 21, ¶ 11 (stating standing issues are also jurisdictional issues); *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶ 20, 122 A.3d 947 (recognizing the courts ability to act sua sponte on jurisdiction and authority issues).

2

documents referred to in the complaint…when the authenticity of such documents is not challenged." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.

## FACTS

Plaintiff is a limited liability company incorporated in the State of Maine. Plaintiff's Complaint (Pl.'s Compl.) ¶ 1. Riverwalk Condominium is located in Damariscotta, Maine. (Pl.'s Compl. ¶ 30.)  Riverwalk is the previous owner of Unit 100 of Riverwalk Condominium, but sold Unit 100 to Defendants Todd and Heather Savage (the "Savages") before commencing this action. (Pl.'s Compl. ¶¶ 30-31.)  Riverwalk and the Savages determined the ownership of the garage abutting Unit 100 was unclear during the sale transaction. (Pl.'s Compl. ¶ 32.)

Riverwalk Condominium was previously known as the Oyster Shell Motel Condominium and was originally offered for Public Sale on September 3, 1987, Book 1422, Page 221. (Pl.'s Compl. ¶ 34.) The Declaration of Condominium is dated September 16, 1987 and recorded in the Lincoln County Registry of Deeds Book 1422, Page 256.  The Declaration defines Unit 100's boundary lines as "(1) The vertical boundary lines are as shown on the Plats and Plans, and consist of real estate on which the Building in located. (2) There are no horizontal boundary lines. (3) The Unit further includes (whether within the aforesaid boundary lines or not) all roofing and roof overhand, eaves, gutters, doors, chimneys, doorstops and thresholds, and all other parts of the Building." (Pl.'s Compl. ¶ 33)." The plans filed with the 1987 Declaration of Condominium do not depict a garage abutting Unit 100. (Pl.'s Compl. ¶35.)  A revised site plan and additional plans of other condominium units were recorded in 1992, but these plans also do not depict the garage. (Pl.'s Compl. ¶ 42.)

The garage was built between 1980 and 1993. (Pl.'s Compl. ¶ 36.)  According to the Town's February 25, 2003 Valuation Report for Unit 100, the garage abutting Unit 100 was built

in 1993. (Pl.'s Compl. ¶ 37.) However, other town documents indicate the garage was built in 1980. (Pl.'s Compl. ¶ 38.) Since being built, the garage has been visibly used, occupied, and controlled exclusively by the Owner of Unit 100. (Pl.'s Compl. ¶ 39). The owners of Unit 100 have been taxed for the garage since at least 1993. (Pl.'s Compl. ¶ 40.) Utilities serving the garage are also billed to and paid by the owners of Unit 100. (Pl.'s Compl. ¶ 41.)

On August 18, 2006, the Declaration of Condominium was restated (the "Restated Declaration") and recorded on August 25, 2006 in the Lincoln County Registry of Deeds Book 3279, Page 53. Section 3.1(b) of the Restated Declaration describes the boundary lines for Unit 100, but does not mention the abutting garage and matches the boundary lines of the original Declaration. (Pl.'s Compl. ¶ 44.) In 2010, an amendment was added to the Restated Declaration changing the name of the Oyster Shell Motel Condominium to the Riverwalk Condominium (the "Condominium"). (Pl.'s Compl. ¶ 46.)

The Restated Declaration states that when a complaint is brought against the Association or the Condominium as a whole it shall be directed to the "Executive Board of the Association, which shall promptly give written notice thereof to the Unit owners and the holders of any mortgages and such complaints shall be defended by the Association. The Unit owners and the holders of mortgages shall have no right to participate other than through the Association in such defense." Defendant's Motion to Dismiss (Def.'s Mot. to Dismiss) 2.; Defendant's Exhibit (Def.'s Ex.) A., (Restated Declaration § 10.4). Any amendment of the Restated Declaration relating to "[b]oundaries of any Unit, conv[ersion] of Units into Common Elements or vice versa; [e]xpansion or contraction of the Condominium, or addition, annexation or withdrawal of property from the Condominium;" or "responsibility for maintenance, and repair," requires the approval of at least sixty-seven percent of the votes in the Association, and at least fifty-one percent

4

of the Mortgagees. (Pl.'s Opp'n to Def.'s Mot. to Dismiss 3.); Plaintiff's Exhibit (Pl.'s Ex.) A, (Restated Declaration Art. 17).

## DISCUSSION

Plaintiff has not offered any plausible reason why it is appropriate to name the individual Unit owners as Defendants, in contravention of the Restated Declaration § 10.4. Even though the lawsuit seeks a declaration that the garage is owned by a specific unit (Unit 100), resolution of that issue will require determination of whether the garage is a common element of the Condominium under the Condominium Act.[6] As a possible common element, any challenge to its ownership, or attempt to convert a common element to a unit, affects the Condominium as a whole, and is thus to be defended against only by the Association per the terms of the Restated Declaration. Since the Association as a whole is involved, the Association is the only proper Defendant.

Plaintiff has also failed to offer a cogent reason why it is necessary to name the individual Unit owners as Defendants. *See* M.R. Civ. P. 19(a).[7] The individual Unit owners have no authority to amend the Restated Declaration to make the garage part of Unit 100, outside of their role in the amendment process, and the Court has no basis for ordering individual Unit owners how to vote. The fact that a former owner of Unit 100 brings an action does not change the Condominium amendment process, nor does it render a dispute of a common element any less a Condominium

---

[6] A unit under the Condominium Act is defined as a "physical portion of the condominium designated for separate ownership or occupancy," as set forth in the Declaration of Condominium. 33 M.R.S.A. § 1601-103(26); 1602-105(5). Any portion of a condominium not designated as part of a unit is a "common element." 33 M.R.S.A. § 1601-103(4).

[7] "Persons to Be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant." M.R. Civ. P. 19(a).

5

wide issue subject to defense only by the Association. Therefore, under the Restated Declaration and M.R. Civ. P. 19(a), the only reasonable Defendant needed for just adjudication is the Association. The Association's Motion to Dismiss the Unit owner Defendants is granted.

## CONCLUSION

For all the foregoing reasons, the Association's Motion to Dismiss all Defendants other than itself is GRANTED.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated:  November 2, 2020                    _____/s_____
                                            Michael A. Duddy
                                            Judge, Business and Consumer Docket

**RIVERWALK REALTY, LLC**

      **v.**

**JAMES COLLINS, et al.**

**and**

**BANK OF AMERICA, N.A.**
**BATH SAVINGS INSTITUTION,**
**FIRST FEDERAL SAVINGS & LOAN,**
**ASSOCIATION OF BATH, THE FIRST, N.A.**

| | |
|---|---|
| **Plaintiff Counsel:** | David Levesque, Esq. |
| | *Law Offices of David Levesque* |
| | 242 Main Street |
| | PO Box 425 |
| | Damariscotta, ME 04543 |

**Defendant Counsel:**

| | |
|---|---|
| Riverwalk Condominium Association | Michael Donlan, Esq. |
| | *Verill Dana, LLP* |
| | One Portland Square |
| | Portland, ME 04101-4054 |

**Party-In-Interest Counsel:**

| | |
|---|---|
| Bank of America, N.A. | Ashley Janotta, Esq. |
| | *Bendett & McHugh* |
| | 30 Danforth St. Ste 104 |
| | Portland, ME 04101 |
| | |
| Bath Savings Institution | Bruce Hochman, Esq. |
| | *Eaton Peabody* |
| | PO Box 15235 |
| | 100 Middle St |
| | Portland, ME 04112-5235 |
| | |
| First Federal Savings & Loan Association of Bath | Michael Hill, Esq. |
| | Laura Maher, Esq. |
| | *Monaghan Leahy* |
| | PO Box 7046 |
| | 95 Exchange St |
| | Portland, ME 04112-7046 |

The First, N.A.