FREDERIC SPOFFORD *versus* GEORGE M. WESTON.

The Revised Statutes, c. 91, § 26, have abrogated the law by which *implied* or *constructive notice* of a prior *unregistered* deed, would avoid a subsequent one from the same grantor. Unless the grantor in the subsequent deed had " *actual* notice," of the prior one, his title is valid.

*It seems,* the conduct of a subsequent purchaser or attaching creditor, who has knowledge or notice of a prior conveyance, and afterwards attempts to acquire a title to himself, is *fraudulent.*

The registry of a deed of a piece of land from one stranger to another, does not indicate that the grantor in said deed had a conveyance from the former actual owner, no such conveyance appearing on the record; nor can any information derived by the grantee from those who obtained their knowledge from such registry, have any such effect.

Nor is a party, proposing to purchase the same premises, bound to inquire of the grantor in such a deed, with regard to the title.

It is for the party relying on an unregistered deed, against a subsequent purchaser or attaching creditor, to prove that the latter had *actual* notice or knowledge of such deed.

Where the declarations of the subsequent purchaser, indicate his disbelief that any prior deed had been given by his grantor, although admitting his knowledge of a claim that such deed existed, by those who professed to

Spofford *v.* Weston.

hold under it, there can arise no presumption that he had *actual* notice of the existence of such a deed; nor can his conduct be considered fraudulent in taking a conveyance to himself.

THIS was a petition for partition. The petitioner claimed an undivided half of a tract of the land. The respondent pleaded sole seizin in himself. Francis Butler, deceased, was formerly the owner. Both parties claimed title under him. The petitioner claimed under a levy made in 1839, on an undivided half of the premises on a judgment against Philip H. Coombs and another, and duly recorded. He produced also a deed from Henry Johnson to P. H. Coombs and J. W. Dickenson, dated Sept. 19, and recorded Sept. 21, 1835; and proved the existence of a deed from Francis Butler to Henry Johnson found amongst the papers of Butler in the summer of 1847, after his decease, and which Johnson testified had once been delivered to him. This deed was dated September 14, 1835.

The respondent claimed under deeds from the heirs of Francis Butler to himself, subsequent to 1845.

A deed of mortgage from Coombs and Dickenson to John Dole, dated June 28, 1837, and a subsequent entry to foreclose, made and recorded, were read; and there was evidence as to the mortgage being settled by Johnson and Francis Butler.

Testimony was also introduced as to notice to the respondent, of the claim of the petitioner, before the former purchased of the heirs of F. Butler. This testimony is sufficiently stated in the opinion of the Court.

The question whether the deed from Francis Butler to Henry Johnson was delivered so as to make it a valid conveyance, was submitted to the jury; and for the purpose of enabling them to find that fact, they were instructed to find the issue for the petitioner if it was so delivered, and for the respondent if it was not; and they found a verdict for the petitioner.

By agreement, the case as it respects the rights of the parties, that fact being found, was to be submitted on the testimony, or so much as may be legal, to the decision of the Court, with power to enter judgment on the verdict, or to set it aside and enter a nonsuit, as the legal rights of the parties might require.

*J. & M. L. Appleton*, for the defendant. The statute requires *actual* notice. It implies that there must have been a deed, and if no deed, there can be no notice. Notice that some one claims a piece of land, is no notice of any deed. There must be a deed recorded, or actual notice of its existence, to the party purchasing. The defendant could have had a warranty deed for $1800, and gave $1750, for a quitclaim. The difference was only to pay for the trouble of maintaining the title against a fictitious claim. Express notice is not pretended. Implied notice must be such as to leave no reasonable doubt. *Lawrence* v. *Tucker*, 7 Greenl. 200 ; *Keese* v. *Wiswell*, 8 Greenl. 98 ; 2 Mass. R. 508 ; 8 Johns. 106 ; 3 Pick. 155 ; 6 N. H. R. 47 ; 8 N. H. R. 264. It is not sufficient to put the purchaser on inquiry. Knowledge of a deed, said to be invalid, is not enough. Notice of the existence, execution and delivery is necessary. *Brackett* v. *Winter*, 5th Verm. R. 424. The record gave no notice. 14 Pick. 231 ; 23 Maine R. 169, 170, 240 ; 24 Maine R. 35 ; 12 Johns. 453. The deed of Johnson to Coombs contains no reference to a deed from Butler to Johnson.

*Kent*, for the plaintiff. Whatever puts a party on inquiry that would result in his obtaining full information, is a notice. 2 Penns. R. 439 ; 3 Penns. R. 67. The 10th Johns. 457, is a case in point Notice to a second purchaser, may be express or implied. 4 Mass. R. 639. The words "actual notice," in R. S. (same as ours,) do not mean positive and certain knowledge, but such knowledge as men act upon in the ordinary affairs of life. *Curtis* v. *Mundy*, 3 Metc. 405. The term is "notice," not knowledge. Possession by a grantee supersedes the necessity of recording, as against subsequent purchasers ; but not on the ground of knowledge. It is an existing fact that ought to put the purchaser on inquiry. 22 Maine R. 315.

Before Weston purchased, he examined the records and had an abstract made. They showed the deed of Bussey to Butler, and the deed of Johnson to Coombs, referring to Bussey's deed to Butler, thus clearly intimating that he claimed under

that title, and not adverse to it. This was notice to Weston that there must have been an intermediate deed, and should have led him to make further inquiry. The record also showed, that Spofford claimed there was such a deed, by his levy on Coombs's part duly recorded. Also that Dickenson and Coombs had acted as owners, by mortgaging in 1837, to Dole, and that Dole had claimed under it, and entered to foreclose. There was no evidence on record or elsewhere, that Butler claimed any right after his deed to Johnson.

Weston knew that Butler and Johnson adjusted Coombs's mortgage to Dole. Why did they adjust it? Dole had no claim on *them*, only on the land. The inference must be, that a deed from Butler to Johnson existed. Weston also knew that Spofford insisted there was such a deed. Wingate told Weston he would not buy, because he had no doubt there was such a deed. A man of ordinary prudence would be put on his guard, as Wingate was, when he refused to buy. Weston told Wingate *he knew what Spofford's claim was,* thus admitting his knowledge before his purchase. Why did not Weston inquire of Johnson? This might have been easily done.

It is not necessary that Weston should have seen the deed; nor that he should be told by any one who had seen it. That is one class of notice, but is not essential, and it is *only* notice, not knowledge. A man may tell another he has seen a deed, and it may be false. But if, after such a statement, the existence of the deed is proved, is not that notice enough?

*Weston, pro se,* in reply. There must be record notice, or *actual* notice. If there is sufficient notice, the second purchaser is guilty of a fraud. A deed on record, where there is no title in the grantor, is no notice. The credit of Johnson was sometimes good, and sometimes bad; and there was no probability of a deed to him, without a mortgage back. Such a man should not be allowed to prove a title in himself by his own oath. If Johnson had a deed, there was nothing for him or Butler to settle with Dole. The settlement must have been Johnson settling for a fraud.

WELLS, J. — The jury having found, that the deed, from Francis Butler to Henry Johnson, was delivered, the question, for our decision, according to the agreement of the parties is, whether upon the facts proved, the respondent had notice of that deed, when he took the conveyances from the heirs of Francis Butler.

The Revised Statutes have made an essential alteration in the law in this respect. The 26th sect. of chap. 91, provides that, " no conveyance of any estate, in fee simple, fee tail, or for life, and no lease for more than seven years from the making thereof, shall be good and effectual against any person, other than the grantor, his heirs and devisees, *and persons having actual notice thereof,* unless it is made by a deed recorded, as provided in this chapter."

The *implied* or *constructive* notice, of a prior unregistered deed, which would avoid a subsequent one from the same grantor, is abrogated by the statute. The grantee, in the subsequent deed, must have " actual notice" of the prior one, otherwise his title is valid. The language of the statute is clear and explicit and leaves no room to doubt, as to the intention of the Legislature.

In the case of *Pomroy* v. *Stevens*, 11 Metc. 244, a construction has been given to the Massachusetts statute (the phraseology of which is the same as ours,) similar to that adopted by us, in the present case. The authorities cited show, that the conduct of a subsequent purchaser or attaching creditor, who has knowledge or notice of a prior conveyance, and afterwards attempts to acquire a title to himself, is *fraudulent.*

But did the respondent have actual knowledge or notice of the deed, from Francis Butler to Johnson, when he took his title from the heirs of Francis Butler, in 1846 and 1847.

Francis Butler died in June, 1845. His deed to Johnson, which was found in the summer of 1847, by Francis G. Butler, among his father's papers, bears date September 14, 1835. Francis G. Butler was the administrator of his father's estate.

The respondent, Weston, could not apply to Francis Butler

for information, for he was dead. Francis G. Butler told Weston, that in his opinion, his father had never given a deed to Johnson. The deed had not then been found.

Johnson conveyed to Coombs and Dickenson, September 19, 1835. This conveyance was recorded September 21, 1835. Coombs did not see any deed from Francis Butler, when he and Dickenson took their deed, nor does it appear, that either of them, at any time, saw the deed from Francis Butler, before it was exhibited at the trial. Weston was told before he purchased, that Spofford claimed the land. This information was communicated to him by Francis G. Butler. Weston told Wm. P. Wingate, that he knew, when he purchased the land, that Spofford claimed there was a deed from Francis Butler to Johnson; but he had examined the records, and Spofford's claim was not worth a straw. Weston had seen the title of Coombs and Dickenson, as exhibited by the registry, and also that of Daniel Spofford, under whom the petitioner claims, arising from an attachment of an undivided half of the premises, as the property of Coombs, made in 1835, and a levy on the same, made in 1839. But these records show no title derived from Butler. And the registry of a deed is constructive notice only to after purchasers, under the same grantor. *Bates* v. *Norcross,* 14 Pick. 224; *Roberts* v. *Bourne,* 23 Maine R. 165; *Veazie* v. *Parker, ibid.* 170; *Pierce* v. *Taylor, ibid.* 246.

The declarations made to Weston, appear to have been made by those, who derived their information from the registry, which exhibited a title from Johnson and those claiming under him. But as the registry, of a deed from Johnson, does not indicate, that Francis Butler conveyed to him, so the notice given to Weston, by those who obtained their knowledge from the registry alone, could have no greater effect. It does not appear, that any person, whose knowledge was derived from any other source, communicated with Weston in reference to the title before he purchased.

What connection Francis Butler had with the mortgage to John Dole, is obscure and uncertain. Francis G. Butler says,

that Weston told him, that his father and Johnson adjusted the mortgage with John Dole. It is left altogether in doubt, whether Francis Butler did any thing, by which it would appear, that he recognized the title of Johnson to the premises in controversey, and it is very far from showing any actual notice to Weston, that Francis Butler had conveyed to Johnson. Implied notice is no longer available.

But it is contended, that Weston should have applied to Johnson who could have given him correct information of the whole transaction between him and Francis Butler. Johnson was residing in Boston, when Weston purchased, and it would have been very easy for Weston to have applied to him, personally or by letter.

The statute says he must have actual notice. Because Johnson had conveyed the premises, it could not be implied, that Francis Butler had conveyed to him. The former was not a fact of such a character, as that the latter could necessarily be inferred from it. Johnson might convey without any claim to title, or he might claim it from another source. But the statute has removed from Weston the pressure of implied knowledge or probabilities.

In the case of *Pomroy* v. *Stevens*, before cited, the tenant was in possession and occupation of the demanded premises, when the demandant attached them, as the property of the tenant's grantor. Now it would have been easy for the demandant, to have inquired of the tenant respecting his title. But it is said by WILDE, J. in that case, " that it is not sufficient to prove facts that would reasonably put him on inquiry. He is not bound to inquire ; but a party relying on an unregistered deed, against a subsequent purchaser or attaching creditor, must prove that the latter had actual notice or knowledge of such deed." And we believe this is the true construction of the statute. For if a person having implied or constructive notice were bound to make inquiries, he would be affected by the information, which he might have acquired, and therefore by implied knowledge. Such a construction would annul the statute, and leave the law, as it was, before its enactment.

Spofford *v.* Weston.

The whole testimony tends to show, that Weston had no confidence in Johnson's title. He did not believe, that Johnson ever had a deed. Eleven years had elapsed since Johnson had conveyed, and no record of Francis Butler's deed to him could be found. Neither Francis G. Butler, nor Weston, considered Spofford's claim of any value. Only fifty dollars were deducted from the consideration of seventeen hundred dollars, on that account. It does not appear, in the case, that Johnson before the respondent's title accrued, ever stated to any person claiming under him, that he had a deed from Francis Butler. He says, that sometime after he had conveyed to Coombs and Dickenson, a person called on him, and made inquiries about the deed to him, that he then had the deed, and told the person, he *might take it, and get it recorded.* Spofford told him, he thought the man who called on him, was the one he had asked to make the inquiries. It does not appear, that this person ever communicated to Spofford the answers of Johnson, nor why the deed was not taken and recorded. Johnson says, he had the deed with him, in Bangor, when he conveyed to Coombs and Dickenson. But Coombs has no recollection of seeing it, and it is said, that no reference is made to the deed to Johnson, in his deed to Coombs and Dickenson. But, as no copies of the deeds have been furnished to us, we are unable to say, whether there is any such want of reference.

The facts of the case were calculated to create great distrust in the mind of any one, whether Francis Butler had ever conveyed to Johnson ; and Weston appeared to disbelieve entirely the fact of any such conveyance. If Francis Butler had been living, we do not think an attaching creditor would have been bound to apply to him or Johnson, before making an attachment as the property of Butler, although he might possess as much information, concerning the state of the title, as Weston did.

In the case of *Curtis* v. *Mundy,* 3 Mctc. 405, the demandant told three witnesses before he made the attachment, that the debtor had given a deed of the land to the tenant. His declaration warranted the conclusion, that he had actual notice of

the fact.    But Weston's declarations are all, entirely repugnant
to the idea, that he had any such notice.

We cannot consider the conduct of the respondent, as frau-
dulent, in making the purchase from the heirs of Francis But-
ler ; there is nothing in the case, shewing him a *mala fide*
purchaser, or creating a doubt in the honesty of his convictions
as expressed by his declarations, that Johnson never had a deed
from Francis Butler.

In conformity with the agreement of the parties, the verdict
is to be set aside, and a nonsuit entered.