**BRINK'S, INC. and Purolator
Courier Corp.**

**v.**

**MAINE ARMORED CAR AND
COURIER SERVICE, INC. and
Public Utilities Commission.[1]**

Supreme Judicial Court of Maine.

Argued Sept. 17, 1980.

Decided Dec. 12, 1980.

Sanborn, Moreshead, Schade & Dawson, Gordon H. Smith (orally), Peter T. Dawson, Augusta, for Purolator.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Everett P. Ingalls, Portland (orally), for Brink's.

---

1. This proceeding was filed in this Court under the title "In the Matter of the Application of Maine Armored Car and Courier Service, Inc." That title is incorrect because it does not reflect the adversary nature of the proceeding; therefore, we have recaptioned the case. *See Sewall v. Spinney Creek Oyster Co.,* Me., 421 A.2d 36, 38 -39 (1980).

Verrill & Dana, John R. McKernan, Jr., Portland (orally), for Maine Armored Car.

Public Utilities Commission, Cushing W. Pagon (orally), Horace S. Libby, Augusta, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ., and DUFRESNE, A. R. J.

GLASSMAN, Justice.

Brink's, Inc. and Purolator Courier Corp., both contract carriers, appeal from an order of the Public Utilities Commission granting Maine Armored Car and Courier Service, Inc. (MAC) contract carrier authority to furnish armored car service and courier service throughout Maine. MAC and the PUC assert that Brink's and Purolator do not have standing to bring these appeals. We agree and dismiss the appeals.

■ On February 12, 1979, MAC filed an application for contract carrier authority pursuant to 35 M.R.S.A. § 1555.[2] Brink's filed a petition to intervene in the proceeding as did Purolator. MAC did not object to either petition. On July 26, 1979, the PUC granted both petitions to intervene. Hearings on the MAC application were held in September and October, 1979, after which all parties submitted briefs. On February 5, 1980, the examiner's report was filed and the intervenors filed exceptions to it. The PUC issued its final order granting MAC contract carrier authority on March 13, 1980. Brink's and Purolator appeal from this order pursuant to 35 M.R.S.A. § 303. In pertinent part, Section 303 provides:

An appeal from a final decision of the commission may be taken to the law court on questions of law in the same manner as an appeal from a judgment of the Superior Court in a civil action. Any person, who has opposed and participated in opposition to applications, petitions or commission proceedings upon which a

public hearing was held and who is adversely affected by the final decision of the commission, is deemed a party for purposes of taking an appeal from such decision. 35 M.R.S.A. § 303.

The first sentence quoted above grants jurisdiction to the Law Court to hear appeals on questions of law from a final decision of the PUC. The second sentence defines the class of persons which has standing to invoke the jurisdiction of the Law Court. The second sentence is not an exclusive definition since the party who was the subject of a PUC proceeding has standing to appeal yet cannot be characterized as one who "has opposed and participated in opposition to applications, petitions or commission proceedings." Similarly, one who sought to participate in opposition before the PUC but who was improperly denied intervenor status and is adversely affected by the final decision has standing. *See Central Maine Power Co. v. Public Utilities Commission*, Me., 382 A.2d 302, 312–13 n. 9 (1978).

■ We have previously held the quantum of interest required for standing to appeal is the same as that required for standing to intervene—the party must be directly and substantially affected by the action or contemplated action of the PUC. *Eastern Maine Electric Cooperative, Inc. v. Maine Yankee Atomic Power Co.*, Me., 225 A.2d 414, 415 (1967). We have noted that this is a strict standard. *See Central Maine Power Co. v. Public Utilities Commission, supra*, 382 A.2d at 312 n. 9. The acquisition of intervenor status before the Public Utilities Commission does not automatically confer standing to appeal.

The mere fact that the Commission saw fit either erroneously or as a mere act of grace to vouchsafe status as intervenors to these parties does not establish or ensure their standing as appellants or relieve them from the necessity of demonstrating on appeal that they have a viable interest in these proceedings. *Eastern*

---

2. A prior application had been filed by Charles S. Reder, d/b/a Maine Armored Car and Courier Service. The PUC had permitted the applicant to voluntarily dismiss this application.

Brink's and Purolator appealed the dismissal to this Court. In an unpublished order dated July 10, 1980, those appeals were dismissed as moot.

*Maine Electric Cooperative, Inc. v. Maine Yankee Atomic Power Co., supra,* 225 A.2d at 416.

MAC's application was brought pursuant to the provisions of 35 M.R.S.A. § 1555. For Brink's and Purolator to have standing to appeal, they must demonstrate that (1) they are within the class of persons whose interests Section 1555 seeks to protect and (2) the objectives of Section 1555 cannot be realized without their participation. *See Central Maine Power Co. v. Public Utilities Commission, supra,* 382 A.2d at 312–14.

■ The policy statement of Section 1555 reads:

It is declared that the business of contract carriers, which term is intended to include all persons, firms or corporations operating or causing the operation of motor vehicles transporting freight or merchandise for hire upon the public highways, other than common carriers over regular routes, is affected with the public interest and that the safety and welfare of the public upon such highways, the preservation and maintenance of such highways and the *proper regulation of common carriers* using such highways require the regulation of contract carriers to the extent provided .... 35 M.R.S.A. § 1555 (emphasis added).

Only the public interest and the interests of *common carriers* are singled out for protection. The statute demonstrates an intention to regulate competition between contract carriers and common carriers; nothing in the statute evidences a legislative intention to regulate competition among contract carriers. Common carriers must hold themselves out as serving all members of the public over regular routes; common carriers serve a public interest. *See* 35 M.R.S.A. §§ 1552–54. Any proposed contract carrier service could dilute or endanger a similar but public service provided by common carriers. Unlike common carriers, contract carriers can protect themselves from competition. As private businesses free to contract or not with shippers seeking their services, they guard their interests in the bilateral contracts they make or refuse to make with customers. We find no expression of legislative purpose to deprive the public of the beneficial effects of ordinary competition among contract carriers. We conclude, therefore, that Brink's and Purolator are not within the class whose interests Section 1555 seeks to protect. We have in the past denied standing to appeal a PUC decision to one who is a mere competitor. *See Central Maine Power Co. v. Public Utilities Commission, supra,* 382 A.2d at 311–14.

The participation of Brink's and Purolator is unnecessary to achieve the objectives of Section 1555. To the extent that one of the objectives of the statute is to prohibit interference with the public service of common carriers, the participation of contract carriers in the PUC proceeding is unnecessary to achieve that objective. To the extent that the objective of the statute is to protect the safety and welfare of the public upon the highways of this state and to preserve and maintain such highways, the contract carriers have no greater interest than does any other member of the motoring public. The PUC itself is the primary guardian of the public interest; common law and statutory safeguards ensure that the Commission adequately performs this function:

[T]he common law powers of the attorney general may often be available, either on his own motion or at the relation of a private individual, to make the Commission accountable in the public interest. *Central Maine Power Co. v. Public Utilities Commission, supra,* 382 A.2d at 314.

Similarly, other agencies of state government are able to protect the public interest in safety and in the preservation and maintenance of the highways. These concerns are the direct responsibility of the Department of Transportation,[3] the State Police[4] and the Secretary of State.[5]

---

**3.** *See* 23 M.R.S.A. § 52.

**4.** *See* 25 M.R.S.A. § 1502.

**5.** *See* 29 M.R.S.A. § 51.

Because Brink's and Purolator as contract carriers do not have a direct and substantial interest in the granting of contract carrier authority to MAC, we conclude that they do not have standing to appeal the Commission order.

The entry is:

Appeals dismissed.

All concurring.