2012 ME 46

**Robert D. SPICKLER**

v.

**Adah P. GINN.**

Supreme Judicial Court of Maine.

Argued: Feb. 16, 2012.

Decided: March 29, 2012.

---

Richard P. Olson, Esq. (orally), and N. Quinn Collins, Esq., Perkins Olson, P.A., Portland, for appellant Adah P. Ginn.

Chris Neagle, Esq. (orally), Troubh Heisler, Portland, for appellee Robert D. Spickler.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Adah P. Ginn appeals from a judgment entered in the Superior Court (Sagadahoc County, *Horton, J.*) in favor of Robert D. Spickler on Robert's claims for declaratory judgment and to quiet title, and on Adah's claim for adverse possession. Adah challenges the court's declaration that, between her and Robert's competing deeds to the same property, Robert is the rightful owner of the property.[1] We affirm the judgment.

---

1. Robert cross-appeals on the issue of Adah's imputed corporate knowledge. Because we affirm the judgment, we need not address the substance of Robert's cross-appeal.

## I. BACKGROUND

[¶ 2] In 1970, R.D. Realty Corporation acquired property in the Parker Head area of Phippsburg. In 1976, R.D. Realty deeded a portion of its Parker Head property to Olive S. Spickler, Robert's wife. Olive did not record the deed, however, until ten years later, in 1986. Olive deeded the property to Robert in 2007.

[¶ 3] Meanwhile, in 1983, R.D. Realty gave a deed in lieu of foreclosure to Depositors Trust Company of Southern Maine for all of its property at Parker Head, with the exception of "such lots and parcels of land as have been heretofore sold and conveyed out of said premises."[2] The deed in lieu of foreclosure did not specifically refer to or exclude the property deeded to Olive. Depositors Trust, later succeeded in interest by Key Bank of Southern Maine, recorded its deed in 1984.

[¶ 4] Key Bank conveyed to Herbert E. Ginn the property Depositors Trust had received from R.D. Realty. Herbert recorded his deed in 1984 and then deeded the same property to Parker Head .(the Company),[3] which recorded its deed in 1985. In 2002, the Company conveyed to Adah, Herbert's wife, as a gift, a portion of the property Herbert had conveyed to it; Adah immediately recorded the deed. The property Adah received as a gift purported to include a portion of Olive's claimed property. The end result of the two series of conveyances was that, in 2007, both Robert and Adah possessed a recorded deed to the same property.

[¶ 5] Litigation over the disputed area commenced in 2007.[4] In the context of that litigation, Robert filed a third-party complaint against Adah requesting a declaratory judgment that he is the owner of the disputed property and seeking to quiet its title. See 14 M.R.S. §§ 5951–5963, 6651–6662 (2011). Later, Adah asserted a counterclaim for adverse possession of the property.

[¶ 6] The court conducted a jury trial in February of 2011, during which the jury was presented with evidence that included certain facts and exhibits to which the parties had stipulated. After trial, the jury made the following findings of fact by special verdict form: (1) when Depositors Trust accepted the deed in lieu of foreclosure from R.D. Realty in 1983, Depositors Trust knew of R.D. Realty's previous deed to Olive; (2) when Herbert purchased the property from Depositors Trust in 1984, Herbert also knew of R.D. Realty's previous deed to Olive; and (3) Adah failed to establish multiple elements of her adverse possession claim to the property in question. The court entered a judgment based on the jury's verdict and its own finding that the Company had actual knowledge of the property previously conveyed to Olive. Adah does not challenge the jury's or the court's factual findings, but appeals from the court's entry of a judgment on those findings awarding ownership of the property to Robert.

## II. DISCUSSION

[¶ 7] The trial court interpreted Maine's recording statute, 33 M.R.S. § 201 (2011), to prioritize Robert's claim to the

---

2. R.D. Realty had sold some of the .property to various third parties in the mid–1970s.

3. Herbert was the president of the Company, and he and Adah were the only directors and shareholders of the Company.

4. In addition to the gift of some property to Adah, the Company also sold other portions of Parker Head property to two sets of purchasers in 2004. That portion of the litigation was resolved by a summary judgment, which we affirmed in *Veneziano v. Spickler,* Mem–10–43 (Mar. 11, 2010). All claims by all other related parties have since been resolved, and are not relevant to the disposition of the instant appeal.

property over Adah's claim. We interpret the meaning of the statute de novo by analyzing its plain language. *See Kimball v. Land Use Regulation Comm'n,* 2000 ME 20, ¶ 18, 745 A.2d 387.

[¶ 8] Like recording statutes in other states, section 201 has long provided a mechanism for public documentation evincing the transfer of real property. *See* Creteau, *Maine Real Estate Law* 257 (1969); 14 Richard R. Powell & Michael Allan Wolf, Powell on Real Property § 82.01(1)(a), (b) (2005). It provides, in pertinent part:

No conveyance of an estate in fee simple, fee tail or for life, or lease for more than 2 years or for an indefinite term is effectual against any person except the grantor, his heirs and devisees, and persons having actual notice thereof unless the deed or lease is acknowledged and recorded in the registry of deeds within the county where the land lies, and if the land is in 2 or more counties then the deed or lease shall be recorded in the registry of deeds of each of such counties, and in counties where there are 2 or more registry districts then the deed or lease shall be recorded in the district legal for such record. Conveyances of the right, title or interest of the grantor, if duly recorded, shall be as effectual against prior unrecorded conveyances, as if they purported to convey an actual title. All recorded deeds, leases or other written instruments regarding real estate take precedence over unrecorded attachments and seizures.

. . . .

33 M.R.S. § 201.

[¶ 9] Among its other purposes, section 201 creates a priority system for competing claims to the same property. Creteau, *Maine Real Estate Law* 257–58; 14 Powell & Wolf, Powell on Real Property § 82.01(1)(a), (3). Recording statutes from other jurisdictions generally employ one of three main approaches to determining priority to disputed land: "race," "notice," and "race-notice." Creteau, *Maine Real Estate Law* 265–66; 14 Powell & Wolf, Powell on Real Property § 82.02(1)(a). "Race" statutes provide that the first to record takes priority, even if the first to record obtained her deed later in time. Creteau, *Maine Real Estate Law* 265; 14 Powell & Wolf, Powell on Real Property § 82.02(1)(a), (c)(i). "Notice" statutes provide priority to a subsequent purchaser who acquires the property without notice of any prior conveyance, without regard to whether or when either party has recorded his deed. Creteau, *Maine Real Estate Law* 265–66; 14 Powell & Wolf, Powell on Real Property § 82.02(1)(a), (c)(ii). Finally, hybrid "race-notice" statutes afford priority to a subsequent purchaser who acquires the property without notice of any prior conveyance, as long as the subsequent purchaser records his deed before the prior purchaser records his. Creteau, *Maine Real Estate Law* 266; 14 Powell & Wolf, Powell on Real Property § 82.02(1)(a), (c)(iii).

▪ [¶ 10] Although we have not had occasion to use this precise terminology in evaluating into which of these categories section 201 falls, we take this opportunity to clarify that Maine's recording statute is a "race-notice" provision. The plain language of section 201 states that when a party chooses not to acknowledge and record her deed, that deed trumps the interest in the same property of only three classes of people: the grantor, the grantor's heirs and devisees, and people who have *"actual notice"* of the conveyance. 33 M.R.S. § 201 (emphasis added). By this language, the provision contains a notice requirement. *"[I]f duly recorded,"* however, a deed is more secure in that it trumps "prior unrecorded conveyances," as well as any subsequent recorded or unre-

corded conveyance. 33 M.R.S. § 201 (emphasis added). By this language, section 201 also contains a race requirement.

[¶ 11] This interpretation is supported by established authority, which provides that if a grantor conveys property to more than one grantee, a subsequent grantee may divest the first grantee of title if he obtains the property *"without notice* of the first grantee's prior unrecorded deed *and place[s] his own deed on record."* Hill v. McNichol, 76 Me. 314, 317 (1884) (emphases added). Although *Hill* was issued more than a century ago, it was decided based on language that has undergone remarkably few changes since then, and we reaffirm its vitality today.[5] *See* Laws of Maine ch. 36, § 1 (approved Feb. 20, 1821).

[¶ 12] As a race-notice provision, section 201 therefore provides that when two parties claim the same property, a subsequent grantee obtains title to the property notwithstanding a prior conveyance if the subsequent grantee both (1) has no actual notice of the first conveyance, and is not the grantor, the grantor's heir, or the grantor's devisee, and (2) recorded his deed before the first grantee recorded hers. 33 M.R.S. § 201; *see also* Creteau, *Maine Real Estate Law* 266 & n. 30.

[¶ 13] Accordingly, the recording statute provides two ways in which Adah could have obtained good title to the property as issue. First, she could obtain her deed to the property from a predecessor in title who had already divested Olive of her title by fulfilling the conditions of the recording statute. Second, she could independently fulfill the conditions of the recording statute to divest Olive of her preexisting interest. We review the conveyances in Adah's chain of title in chronological order to determine whether either of these alternative methods applies to Adah.

[¶ 14] The first path requires an examination and evaluation of the property before 1986, when Olive recorded her deeds. The ownership of the property at issue first became questionable in 1983, when Depositors Trust obtained a deed from R.D. Realty that purported to include the property R.D. Realty had previously conveyed to Olive. Following a trial, a jury found that Depositors Trust "knew" that R.D. Realty had already conveyed a portion of the same property to Olive, and Adah does not challenge the jury's finding. Although Depositors Trust did record its deed before Olive recorded hers, the jury's finding that Depositors Trust had actual notice that a portion of that property had already been conveyed to Olive precluded Depositors Trust from successfully asserting that it had priority to the disputed parcel pursuant to section 201 as against Olive. *See Spofford v. Weston,* 29 Me. 140, 144 (1848) ("[T]he conduct of a subsequent purchaser or attaching creditor, who has knowledge or notice of a prior conveyance, and afterwards attempts to acquire a title to himself, is *fraudulent."*).

[¶ 15] The jury also found, based on the evidence presented at trial, that when Herbert obtained the property from Key Bank, Herbert "knew" that R.D. Realty

---

5. Maine first adopted its recording statute in 1821, less than one year after it became a state, and modeled it on the Massachusetts statute that had been in effect since the 1630s. Laws of Maine ch. 36, § 1 (approved Feb. 20, 1821); *see* 4 Thomas E. Atkinson et al., American Law of Property § 17.9 (1952). Very similar to the current version of 33 M.R.S. § 201 (2011), Maine's first recording statute provided that "all deeds or other … conveyances of any lands … acknowledged … by [the] grantor … and recorded … in the registry of deeds … shall be valid to pass the same without any other act or ceremony in the law whatsoever" and that no unrecorded conveyance "shall be good and effectual in law to hold such lands … against any other person or persons, but the grantor or grantors, and their heirs only." Laws of Maine ch. 36, § 1.

had already conveyed that property to Olive. Adah also does not challenge this finding of fact. Although Herbert, like Depositors Trust, recorded his deed before Olive recorded hers, the jury's finding that Herbert knew of the conveyance to Olive means that Herbert also never divested Olive of her title to the property.

[¶ 16] Herbert then purported to convey the property to the Company in 1985, and the Company became the third party to record its deed before Olive. In its judgment on the jury's verdict, however, the court found that the Company also had actual knowledge of R.D. Realty's prior conveyance to Olive. Again, Adah does not dispute this finding. Given that knowledge, the Company failed to divest Olive of her title to the same parcel. In short, the jury's verdict and the court's findings in this portion of the litigation leave no room to find any party in Adah's chain of title who fulfilled both of the required elements to claim priority: acquiring the property without notice of the prior conveyance, and recording its deed before the prior purchaser has done so.[6] None of Adah's predecessors in title had divested Olive of her interest in the property according to section 201, so none could pass good title on to Adah before Olive recorded her deed in 1986.

[¶ 17] The second path requires an examination and evaluation of the property from 1986 forward. As between Adah and Olive there is no dispute that Olive recorded her deed in 1986. Adah did not obtain or record her deed until 2002, sixteen years after Olive had already recorded hers. Although Robert did not obtain or record his deed until 2007, by recording her deed in 1986, Olive effectively cut off the interest of any subsequent grantee who had not already recorded as of that date; that includes Adah. In cutting off Adah's interest by recording before Adah did, Olive was able to pass good title on to Robert. The failure of Adah or any of Adah's predecessors in title to divest Olive of her prior interest in the property precludes a judgment in Adah's favor pursuant to section 201.

[¶ 18] This interpretation comports with the most complete discussion of the recording statute found in Maine case law:

> If the holder of a fee conveys to one who omits for the time being to record his deed, and thereafter the grantor makes another conveyance of the same premises to a second grantee having notice of the prior unregistered deed, the former grantee holds the title against the second even if the latter's deed is recorded. Moreover if any number of conveyances be made in the chain of title derived from the second grantee, each with like notice of the prior unrecorded deed, the first grantee will still hold the title although all the deeds except his own are duly recorded; and he can perfect his title by recording his deed. If, however, any one of the second grantee's successors purchase[s] *without notice* of the first grantee's prior unrecorded deed *and place[s] his own deed on record,* the title of the first grantee under his unrecorded deed is gone forever.

*Hill,* 76 Me. at 316–17 (emphases added). We apply *Hill* to the present matter, in light of the jury's and the court's findings, as follows.

[¶ 19] If a fee owner (R.D. Realty) conveys property to someone who fails to record the deed right away (Olive), and that fee owner (R.D. Realty) thereafter conveys the same property to a grantee who has notice of the prior unrecorded

---

**6.** Given this analysis, we do not reach the other issues of law raised by the parties, including what type of notice is sufficient to inform a grantee of a prior conveyance and to what classes of grantee the protections of the recording statute are available.

deed (Depositors Trust), the first grantee (Olive) holds the title against the second grantee (Depositors Trust) even though the second grantee (Depositors Trust) recorded its deed first. *See id.* Subsequent conveyances from the second grantee (Depositors Trust) to others who have notice of the first conveyance (Herbert and the Company) also fail as against the first grantee (Olive) even if those subsequent grantees (Herbert and the Company) record their deeds before the first grantee (Olive) records hers. *See id.* Although any successor to the second grantee who purchases the property without notice of the first grantee's deed and who records his deed first will render the first grantee's deed "gone forever," Adah does not qualify as such a successor *at least* because she did not record her deed before Olive recorded hers. *See id.* When Olive conveyed the property to Robert in 2007, Olive's ownership in the property was thus already superior to Adah's, and Adah could do nothing to obtain the title. By this analysis, we agree with the Superior Court that the jury's verdict renders Robert the owner of the disputed property as against Adah.

The entry is:

Judgment affirmed.