MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2015 ME 108
Docket:         Wal-14-386
Argued:         June 17, 2015
Decided:        August 11, 2015

Panel:          ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

# HOMEWARD RESIDENTIAL, INC.[1]

v.

# MARIANNE A. GREGOR

ALEXANDER, J.

[¶1]  Marianne A. Gregor appeals from a judgment entered in the District Court (Belfast, *R. Murray, J.*) denying Homeward Residential, Inc.'s foreclosure claim.  Gregor contends that the court erred by (1) stating in its judgment that "[t]he parties may relitigate issues discussed herein in a future action," (2) admitting in evidence a witness's description of a computer printout to support a finding of the amount due on the loan, and (3) finding that Homeward Residential was in possession of the promissory note.  We vacate the judgment and remand for an entry of a dismissal without prejudice.

---

[1]  Before trial in this matter, Homeward Residential, Inc.'s interest in the mortgage was apparently assumed by Ocwen Loan Servicing, LLC, as discussed later in this opinion.  There has been no motion for substitution of party, and for clarity of case references, the name of the case is not changed, though the rulings in this opinion shall bind Ocwen equally.

2

## I. CASE HISTORY

[¶2] Viewing the findings and evidence in the light most favorable to the court's judgment, the case history is derived from the judgment and trial record. *See Botka v. S.C. Noyes & Co., Inc.*, 2003 ME 128, ¶ 15, 834 A.2d 947. The history of the transaction is confusing because of the many assignments and transfers of interest and differing uses of terminology, not always well documented, that the various financial services providers elected to engage in subsequent to the original, and apparently standard, promissory note and mortgage transaction.

[¶3] In this opinion, we use the term "promissory note" to refer to the document by which the homeowner promises to pay the debt owed, although some sources call this document the "mortgage note." We use the term "mortgage" to refer to the document memorializing the agreement that certain real property will secure the debt referenced in the promissory note, although some sources call this document the "mortgage agreement" or "mortgage deed."

A.     The Original Transaction and Subsequent Assignments

[¶4] On May 31, 2002, Marianne A. Gregor and George J. Wulff[2] executed a promissory note in the amount of $80,000 to SUN MORTGAGE – New England,

---

[2] George Wulff was named as Marianne Gregor's co-defendant in the underlying complaint for foreclosure. Although Wulff communicated to the court a request for mediation, he did not otherwise appear in or defend the action. Wulff's name remains on the promissory note and he has not been

Inc.[3]  On the same day, Gregor signed a mortgage on property in Knox securing the debt.  The mortgage listed Sun Mortgage as the "Lender," and by it Gregor "mortgage[d], grant[ed] and convey[ed] the [Knox property] to Lender."[4]  The mortgage was recorded in the Waldo County Registry of Deeds.

[¶5]  The record reflects that the mortgage was assigned or transferred at least eight times subsequent to its creation.  Only five assignments or transfers of the mortgage were recorded in the Registry of Deeds.  The eight assignments or transfers indicated in the available record were as follows:

- On May 31, 2002, the same day that Gregor signed the mortgage, Sun Mortgage assigned its interest in the mortgage to RBMG, Inc.  This assignment was recorded in the Registry.

- On June 4, 2002, RBMG assigned "all its rights, title, and interest" in the mortgage to the Federal National Mortgage Association

---

dismissed from the litigation, but any reference to "Gregor" is to Gregor only, because Wulff has not appealed from the judgment or participated in the appeal.  *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 2 n.2, 96 A.3d 700.

[3] Each entity's name is written as it appears in the trial record.

[4] As part of the transaction, and in terms common to promissory note and mortgage transactions, Gregor agreed to pay reasonable attorney fees should there be any default on the note.  If a proper plaintiff demonstrating standing to enforce the note and the mortgage appears, the trial court may have to determine whether reasonable attorney fees may include the fees and costs incident to tracking and sorting out the numerous assignments and transfers of the note and mortgage subsequent to the original, single loan transaction for which Gregor undertook to pay attorney fees upon default.

4

("Fannie Mae"). This assignment was *not* recorded in the Registry.

- On an unknown date, whatever remaining interest RBMG had in the mortgage, if any, was assumed by NetBank, purporting to be RBMG's successor in interest, perhaps after a takeover of RBMG. At the trial, Homeward Residential presented no documentation regarding the assumption of RBMG's interest by NetBank. There is no indication that this assumption of interest was recorded in the Registry.

- On an unknown date,[5] NetBank, purporting to be RBMG's successor in interest, assigned the mortgage—or whatever remainder interest RBMG had in the mortgage—to Mortgage Electronic Registration Systems, Inc. ("MERS").[6] This assignment was recorded in the Registry. This was the fourth assignment or transfer of an interest in the mortgage, and the last assignment before default.

---

[5] The court found that the date was unknown, and the trial exhibit bears no date. However, the foreclosure complaint attached the series of recorded assignments, and the copy of the assignment to MERS shows at the bottom of the page (cut off in the trial exhibit) that the Waldo County Registry of Deeds received the assignment to MERS on November 13, 2006.

[6] At trial, Homeward Residential failed to offer any evidence that NetBank had any legal interest in the mortgage to assign to MERS, aside from the mortgage assignment itself, upon which was stamped "NetBank AS SUCCESSOR IN INTEREST TO RBMG, INC."

- On September 1, 2010, MERS assigned the mortgage to IXIS Real Estate Capital Inc. This assignment was recorded in the Registry.

- On August 1, 2011, IXIS assigned the mortgage to Bank of America, N.A. This assignment was recorded in the Registry.

- On October 23, 2012, Bank of America assigned the mortgage to Homeward Residential, Inc. This assignment was recorded in the Registry.

- On an unknown date before the trial in this action, Homeward Residential and its interest in the mortgage were taken over by or merged into Ocwen Loan Servicing, LLC. There is no indication in the record that this transfer of ownership and interest was recorded in the Registry.

[¶6] Each of the five assignments recorded in the Waldo County Registry of Deeds states that the assignor is assigning all of its interest in the mortgage to the assignee. The nature of those interests, after the unrecorded assignment of the mortgage to Fannie Mae, is unclear. Fannie Mae has not appeared in this proceeding, and the record does not include any documentation from Fannie Mae authorizing any other entity to appear on its behalf as its agent, loan servicer, or in any other capacity.

6

B.     The Default and Subsequent Court Action

[¶7]  Gregor stopped making payments on the mortgage in June 2009.  On November 10, 2010, IXIS sent Gregor a notice of default and right to cure.  When Gregor had not cured the default by October 17, 2011, Bank of America, purportedly having been assigned the mortgage by IXIS, filed a complaint for foreclosure.  Homeward Residential was later substituted as plaintiff, consistent with the last recorded mortgage assignment.

[¶8]  In August 2013, after the discovery deadline, Gregor moved for leave to serve requests for admissions upon Homeward Residential.  Gregor argued that, during discovery, Homeward Residential produced the Fannie Mae mortgage assignment, which Gregor asserted called into question Homeward Residential's ownership of the mortgage and standing to conduct this foreclosure action.  Gregor sought admissions that Fannie Mae is the owner of the promissory note and mortgage and that Homeward Residential sent a copy of the Fannie Mae mortgage assignment to Gregor during discovery.  The court (*Worth, J.*) granted the motion. In a document dated November 1, 2013, Homeward[7] Residential responded to the request for admissions by stating that Fannie Mae "is the owner of the loan evidenced by the note . . . and the mortgage . . . that are the subject of this lawsuit";

[7]  Counsel responding to the request for admissions actually referred to his client as "*Homewood Residential, Inc.*," but this appears to be a typographical error, as the October 23, 2012, assignment from Bank of America is clearly to "Homeward Residential, Inc."

that Homeward Residential "is not the owner of the loan that is the subject of this lawsuit"; and that Homeward Residential sent a copy of the Fannie Mae mortgage assignment to Gregor during discovery.

[¶9] On February 11, 2014, the court (*R. Murray, J.*) held a bench trial. The sole witness at trial was a loan analyst from Ocwen, which, she testified, is the current servicer of the mortgage. The loan analyst testified that "Ocwen was first a servicer for Homeward [Residential] and then there was a merger between the two," and "Ocwen kind of consumed Homeward [Residential]." The precise nature of the relationship between Ocwen and Homeward Residential remained unclear throughout the hearing. At times, the loan analyst and Homeward Residential's counsel identified both Ocwen and Homeward Residential as being "the plaintiff" in the action.

[¶10] At trial, the court admitted in evidence, among other exhibits, a copy of the original promissory note;[8] a copy of the original mortgage; the series of recorded mortgage assignments; the unrecorded mortgage assignment from RBMG to Fannie Mae; an Ocwen computer printout purporting to show the amount due on the loan; and a copy of Homeward Residential's responses to Gregor's requests for admissions.

---

[8] After examining the original of the promissory note, the court permitted plaintiff's counsel to retain the original and provide a copy for the court record. The promissory note was indorsed in blank.

8

[¶11] On August 20, 2014, the court entered judgment for Gregor but, in its order, made factual findings, including a finding that Gregor owes a total of $119,302.51 on the note. The court also found that Homeward Residential was entitled to enforce the promissory note because its counsel possessed the original note at trial and the note was indorsed in blank. The court determined, however, that Homeward Residential had not established that it had standing to foreclose on the mortgage, citing *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700, due to the prior assignment of the mortgage to Fannie Mae.

[¶12] In its judgment, the court stated that it was "reserving the right for both parties to relitigate the issues discussed herein so that this action does not act as a bar to future action." The entry of the judgment read: "Judgment for Defendant. The parties may relitigate issues discussed herein in a future action." Gregor brought this timely appeal. *See* 14 M.R.S. § 1901 (2014); M.R. App. P. 2.

## II. LEGAL ANALYSIS

[¶13] "We've lost our way in these foreclosure cases." Homeward Residential's counsel expressed this opinion at oral argument. Indeed, the way has been lost, but not through fault of the courts. The financial services industry, through the practice of securitization,[9] spawning a byzantine mass of assignments,

---

[9] Although there are variations in securitization practice, "there is still a core standard transaction" when securitization takes place:

transfers, and documentation, has made it difficult for subsequent assignees to demonstrate that they have standing to bring foreclosure claims and prove the elements necessary to prevail in a foreclosure action in a manner compliant with the laws governing foreclosure, *see* 14 M.R.S. §§ 6321-6325 (2013).[10]   In this process, some entities in the chain of assignments disappear, or their records are lost, making it difficult or impossible to acquire necessary records that qualify for admission under the business records exception to the hearsay rule, M.R. Evid. 803(6), in order to prove ownership of the mortgage, proper notice of defaults, and sums due and paid.

---

> First, a financial institution (the "sponsor" or "seller") assembles a pool of mortgage loans either made ("originated") by an affiliate of the financial institution or purchased from unaffiliated third-party originators.  Second, the pool of loans is sold by the sponsor to a special-purpose subsidiary (the "depositor") that has no other assets or liabilities and is little more than a legal entity with a mailbox.  This is done to segregate the loans from the sponsor's assets and liabilities.  Third, the depositor sells the loans to a passive, specially created, single-purpose vehicle (SPV), typically a trust in the case of residential-mortgage securitization.  The trustee will then typically convey the mortgage notes and security instruments to a document custodian for safekeeping.  The SPV issues certificated debt securities to raise the funds to pay for the loans.  As these debt securities are backed by the cash flow from the mortgages, they are called mortgage-backed securities (MBS).

Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 671-72 (2013) (footnotes omitted).

[10]   The foreclosure statutes have since been amended and a new section has been added. *See, e.g.*, P.L. 2013, ch. 521, § B-1 (effective Aug. 1, 2014) (enacting section 6326) (codified at 14 M.R.S. § 6326 (2014)).  One such amendment (effective October 15, 2015) amends section 6321 to require that, "[i]n order to state a claim for foreclosure upon which relief can be granted, the complaint must contain a certification of proof of ownership of the mortgage note."  P.L. 2015, ch. 229, § 1.  The stated purpose of the amendment is to require the plaintiff in a foreclosure action to identify the owner of the promissory note at the outset of the litigation "when the parties most need that information as they engage in mediation and loan modification efforts."  Summary, Comm. Amend. A to L.D. 401, No. H-257 (127th Legis. 2015).   The additional language will provide a defendant with relief pursuant to M.R. Civ. P. 12(b)(6) if a complaint does not certify such proof.

10

[¶14] The law, the rules of evidence, and court processes have not become more complicated in these matters. Applying established law, however, has become more problematic as courts address the problems the financial services industry has created for itself.[11] *See, e.g., Greenleaf*, 2014 ME 89, ¶¶ 8-17, 24-27, 96 A.3d 700. We address those problems again today.

---

[11] Among those problems is the difficulty of establishing that records and documents are reliable enough to be admitted in evidence and to be used by a court as a basis for judgment. We discussed this issue in *Greenleaf*, 2014 ME 89, 96 A.3d 700, but pause again here to note that, even if Homeward Residential/Ocwen had been able to establish its standing, the evidence it presented to support its claim was wholly inadequate.

The well-recognized business records exception to the hearsay rule, M.R. Evid. 803(6), governs "[t]he admissibility of a business record . . . [and] dictates both (1) what foundation must be laid to admit such evidence . . . and (2) the type of witness required to lay that foundation." *Greenleaf*, 2014 ME 89, ¶ 25, 96 A.3d 700 (discussing M.R. Evid. 803(6) (Tower 2014), which was in effect prior to the Maine Rules of Evidence's restyling in 2015). The foundation must be laid by a witness who is a "custodian or another qualified witness." M.R. Evid. 803(6); *Greenleaf*, 2014 ME 89, ¶ 25, 96 A.3d 700. "A qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his or her knowledge." *Bank of Me. v. Hatch*, 2012 ME 35, ¶ 7, 38 A.3d 1260 (alteration omitted); *see also Greenleaf*, 2014 ME 89, ¶ 25, 96 A.3d 700. In making foundational findings, the court may only consider evidence established prior to the exhibit's admission in evidence. *Greenleaf*, 2014 ME 89, ¶ 26 n.15, 96 A.3d 700.

The loan analyst that Homeward Residential/Ocwen offered was simply not qualified to lay the foundation necessary to admit the printout. Her testimony did not establish that she had any firsthand knowledge of Ocwen's practices that led to the creation of the document, let alone that she was "intimately involved in the daily operation of the business." *Hatch*, 2012 ME 35, ¶ 7, 38 A.3d 1260.

The loan analyst testified that her job at Ocwen is to "review business records on defaulted loans . . . in preparation for legal proceedings." She testified that her knowledge of both Ocwen's auditing procedures, which verify the accuracy of the prior servicers' records, and Ocwen's daily operations, which include collecting payments and making entries in the computer system regarding payments and debts, came secondhand through her training, not from observation or participation in making the entries. For example, when asked what was the basis of her knowledge of Ocwen's procedures for incorporating in its records the records of the loan's prior servicers, the loan analyst testified: "We have to know how prior servicer records become a part of our records. So I was actually told that information. I don't remember it step by step, it's a very detailed process, but the gist of it, yes."

The record is devoid of evidence to support a finding that the loan analyst was a witness qualified to lay the foundation for the computer printout's admission.

A.    Jurisdiction, Justiciability, and Standing

[¶15]  At oral argument, Gregor stated that there has been a lack of clarity on the issue of whether a party's standing affects a court's jurisdiction.  We do not agree, but will begin by addressing this issue.

[¶16]  Standing is properly labeled an issue of "justiciability."  *Madore v. Me. Land Use Regulation Comm'n*, 1998 ME 178, ¶ 8, 715 A.2d 157.  "Justiciability requires a real and substantial controversy, admitting of specific relief through a judgment of conclusive character."  *Witham Family Ltd. P'ship v. Town of Bar Harbor*, 2015 ME 12, ¶ 7, 110 A.3d 642.  "Courts can only decide cases before them that involve justiciable controversies."  *Id.* (quoting *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 12, 738 A.2d 1239).

[¶17]  We have recognized before that the words "jurisdiction" and "jurisdictional" are understood to have "'many, too many, meanings,'" and that "[c]ourts 'have been less than meticulous' in using the term[s]."  *Landmark Realty v. Leasure*, 2004 ME 85, ¶ 7, 853 A.2d 749 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)).  The word "jurisdiction" most properly encapsulates only "'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'"  *Id.* (quoting *Kontrick*, 540 U.S. at 455).

[¶18]   We have stated before that standing issues are "jurisdictional," *see, e.g.*, *Stull v. First Am. Title Ins. Co.*, 2000 ME 21, ¶ 11, 745 A.2d 975, but that observation is shorthand for the statement that standing affects a party's capacity to invoke a court's jurisdiction, *see Brink's, Inc. v. Me. Armored Car & Courier Serv., Inc.*, 423 A.2d 536, 537 (Me. 1980).  We have made a similar observation in other foreclosure cases.   *See, e.g.*, *Greenleaf*, 2014 ME 89, ¶ 9, 96 A.3d 700 ("Without possession of or any interest in the note, [a party] lack[s] standing to institute foreclosure proceedings and [may] not invoke the jurisdiction of our trial courts." (quoting *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 15, 2 A.3d 289)).

[¶19]   Standing does not affect the court's subject-matter jurisdiction over foreclosures; 14 M.R.S. § 6321 grants subject-matter jurisdiction of all foreclosure cases to our trial courts.  A party may not invoke that jurisdiction without standing, however, which is also required by section 6321.   *Cf. Brink's, Inc.*, 423 A.2d at 537 (noting that the first sentence of a now repealed and replaced statute granted subject-matter jurisdiction to this Court to hear appeals of Public Utilities Commission decisions and that the second sentence "define[d] the class of persons [that] ha[d] standing to invoke [that] jurisdiction").

[¶20]  Just as a court may notice and act on issues of jurisdiction at any time, so may a court notice and act on issues relating to its authority at any time, on its

own motion or on the motion of a party. *Francis v. Dana-Cummings*, 2007 ME 16, ¶ 20, 915 A.2d 412; *see also Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1312 (Me. 1987) ("We will entertain a question of standing at any time.").

[¶21] Here, the court properly determined that Homeward Residential/Ocwen lacked standing to bring the foreclosure action pursuant to section 6321. The plaintiff in a foreclosure action must demonstrate that it is the holder of the promissory note and the owner of the mortgage, or that it is claiming under the holder and owner. *Greenleaf*, 2014 ME 89, ¶¶ 9, 10, 12, 96 A.3d 700. Homeward Residential/Ocwen admitted that it does not own the mortgage, and did not offer evidence that it was claiming under the owner of the mortgage. Homeward Residential/Ocwen conceded in its responses to Gregor's requests for admissions that Fannie Mae owns the mortgage.

[¶22] The court also did not clearly err in finding that, because Homeward Residential/Ocwen had a copy of the Fannie Mae assignment in its file for the mortgage, it was more likely than not that each entity assigned the mortgage after it was assigned to Fannie Mae had actual knowledge of the unrecorded assignment. *See* 33 M.R.S. § 201 (2014); *Spickler v. Ginn*, 2012 ME 46, ¶ 10, 18, 40 A.3d 999 (interpreting 33 M.R.S. § 201 to provide that when a party chooses not to record a deed, that deed trumps the interest in the same property of the grantor, the grantor's heirs and devisees, and any person having "*actual notice*" of the

unrecorded conveyance, even if the later person records her deed, as long as she had actual notice of the unrecorded deed at the time she recorded the deed). Any plaintiff claiming to have an interest in the mortgage superior to that of Fannie Mae would have been required to join Fannie Mae as a necessary party. *See* M.R. Civ. P. 19. No effort at joinder was initiated here.

[¶23] Finally, Ocwen's witness's testimony called into question whether Homeward Residential continued to exist. Therefore, the record wholly supports the court's determination that Homeward Residential/Ocwen failed to demonstrate that either had standing to maintain the foreclosure action.

[¶24] Although the court maintained jurisdiction over the parties and subject matter, it could not decide the merits of the case when the plaintiff lacked standing pursuant to section 6321. *See Witham Family Ltd. P'ship*, 2015 ME 12, ¶ 7, 110 A.3d 642 ("Courts can only decide cases before them that involve justiciable controversies."). Instead, the court could only dismiss the action. Because the court addressed the merits of the complaint for foreclosure in its judgment, we vacate the judgment in its entirety and remand for an entry of a dismissal without prejudice.

B.      Other Issues on Appeal

[¶25] Because the case is being dismissed without prejudice, with the entire judgment being vacated, we reject Gregor's claim that the statement in the

judgment that the parties may relitigate the issues in a future action opens the door to future litigation that would otherwise be closed. In any future litigation against Gregor regarding this mortgage, the plaintiff—whoever that may be—will have to establish both the amount due and Gregor's responsibility for paying that amount.

[¶26] The court correctly determined that Homeward Residential/Ocwen lacked standing to pursue the foreclosure claim. However, the court erred when it made findings and entered judgment for Gregor rather than dismissing the action for lack of standing. Therefore, we vacate the judgment in its entirety—including the court's statement to the effect that the parties may relitigate the issues in a future action—and remand for an entry of a dismissal without prejudice.

The entry is:

> Judgment vacated. Remanded for an entry of a dismissal without prejudice.

---

**On the briefs:**

Thomas A. Cox, Esq., Portland, for appellant Marianne A. Gregor

David W. Merritt, Esq., Houser & Allison, APC, Boston, Massachusetts, for appellee Homeward Residential, Inc.

L. Scott Gould, Esq., Cape Elizabeth, for amici curiae Jerome N. Frank Legal Services Organization and Nation Consumer Law Center

**At oral argument:**

Thomas A. Cox, Esq., for appellant Marianne A. Gregor

William Fogel, Esq., Portland, for appellee Homeward Residential, Inc.

Belfast District Court docket number RE-2011-108
FOR CLERK REFERENCE ONLY